**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------- X
In re:

**BE GREENBRIAR LLC**

Debtor.

Chapter 11
Case No. **1-26-42859-jmm**
**Objections Due: August 19, 2026**
**Hearing: August 26, 2026 at 1:30 p.m.**

---------------------------------------------------- X

# DEBTOR'S OBJECTION AND OPPOSITION TO BP CM ACQUISITION SPV, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY [ECF NO. 16]; REQUEST FOR EVIDENTIARY HEARING, LIMITED DISCOVERY, AND ALTERNATIVE CONDITIONAL RELIEF

## PRELIMINARY STATEMENT

1. The Motion asks the Court to authorize immediate foreclosure and permanent loss of the Debtor's principal asset on a record assembled before the Debtor had a meaningful post-order-for-relief opportunity to organize its Chapter 11 affairs. This is an involuntary case. The Debtor did not file the petition. The Order for Relief was signed July 28, 2026, and BP CM filed this Motion on July 29, 2026.

2. BP CM's lack-of-equity and bad-faith theories depend on unresolved assumptions. Its valuation combines two properties owned by two separate debtors into one 120-unit portfolio, without assigning a separate value to Greenbriar or allocating the asserted debt, reserves, advances, rents, and expenses between the two estates. Its bad-faith theory attributes the intent of an involuntary petitioning creditor to the Debtor without evidence that the Debtor directed, solicited, financed, controlled, or colluded in the filing.

3. BP CM also relies on an alleged foreclosure consent as proof that the Debtor abandoned the property, conceded lack of equity, and admitted that reorganization was impossible. The Debtor does not ask this Court to vacate the Florida judgment. But the consent is

not self-authenticating proof of corporate authority or of every bankruptcy inference BP CM seeks. BP CM's exhibit shows Simon Markovici's signatures for both Greenbriar and Union, leaves the printed Name and Title lines blank, and attaches no member consent, manager vote, Independent Director approval, or other contemporaneous authority instrument.

4. The governing documents make authority at least genuinely disputed. BE Tampa LLC is Greenbriar's sole member. Greenbriar's agreement identifies three initial managers, an Independent Director, and two Authorized Signatories for acquisition and mortgage-loan documents. It gives managers broad authority and excludes an ordinary property sale from the definition of Material Action, but it also imposes special-purpose and Independent Director protections for specified extraordinary actions. The interaction of those provisions with a paper that confessed a $16.79 million judgment, waived every defense, admitted every allegation, approved default interest, late charges, advances, and fees, and authorized immediate judicial sale requires evidence, not assumption.

5. There is no immediate collateral emergency. A court-appointed Receiver already controls possession, rents, leases, operations, and property-level finances. This Court has continued that arrangement through September 11, 2026 and scheduled a further receiver hearing for September 9, 2026. BP CM remains protected while the Court permits a short process to obtain the receiver accounting, separate allocations, valuation testimony, and authority evidence.

6. BP CM's own valuation materials also undermine permanent-futility arguments. They present a stabilized 90% occupancy scenario with projected annual net operating income of approximately $890,401 at takeover, $1,037,111 in fiscal year one, and $1,061,425 in fiscal year two, together with positive projected cash flow before debt service. Those are BP CM's

projections, not the Debtor's. They require testing but establish material rehabilitation and income-producing potential.

7. The Motion should be denied. Alternatively, the Court should preserve the Receiver arrangement, deny relief against the separate Union estate, refuse to waive Rule 4001(a)(4), permit limited discovery, and set an evidentiary hearing after the Debtor has a short opportunity to present a concrete refinancing, capital, controlled-sale, or other reorganization proposal.

## RELEVANT RECORD

### A. This is an involuntary case, and the Motion followed immediately after the Order for Relief.

8. David Neiman filed the involuntary Chapter 11 petition on June 8, 2026. The Debtor did not commence this case voluntarily. (Exs. A and H.)

9. Before entry of the Order for Relief, Christian N. Martinez appeared for the Debtor and filed an opposition to BP CM's earlier motion concerning the Receiver. The docket contradicts the categorical assertion that the Debtor was completely absent. (Ex. A.)

10. The Court entered an interim order allowing the Receiver to remain in possession through September 11, 2026 and scheduled a further hearing for September 9, 2026. (Ex. A; ECF No. 16 at paragraph 24.)

11. The Order for Relief was signed July 28, 2026. BP CM filed the stay-relief Motion on July 29, 2026 with fourteen attachments. The first meeting of creditors is scheduled for August 28, 2026, after the August 26 stay-relief hearing. (Exs. A, G, and H.)

### B. The Receiver arrangement protects the properties and rents.

12. The Florida receivership order authorized the Receiver to possess and operate both properties, collect rents, manage leases and finances, control relevant accounts, and

preserve the collateral. BP CM acknowledges that this Court's interim order permits the Receiver to manage the property, collect all rents, retain all powers, and perform all acts authorized by the receivership order. (ECF No. 16 at paragraph 24; Ex. A.)

13. The Debtor does not seek immediate operational turnover before the September 9 hearing. It proposes that the Receiver remain temporarily, keep rents segregated, preserve insurance and tenant services, pay necessary ordinary property expenses, and provide transparent separate accountings for Greenbriar and Union.

14. Because possession and cash flow are controlled by a court-appointed Receiver, BP CM identifies no new post-order-for-relief act by the Debtor threatening the collateral. Immediate foreclosure is unnecessary during the short period required to complete the record.

**C. BP CM combines two debtors and two properties.**

15. BE Greenbriar LLC and BE Union LLC are separate Florida limited liability companies and separate Chapter 11 debtors. Greenbriar owns 13214 Bunn Circle; Union owns 2301 East Sligh Avenue. BE Tampa LLC is Greenbriar's sole member and is the ownership entity behind both property companies. (Exs. B and C.)

16. The Motion repeatedly describes Greenbriar's alleged sole asset as one 120-unit complex encompassing both addresses. The Broker Opinion of Value likewise combines Greenbriar and Willow Square into one portfolio. (ECF No. 16 at paragraphs 1, 8, 31-32; Ex. E.)

17. BP CM supplies no separate current valuation for Greenbriar or Union and no property-specific allocation of principal, regular interest, default interest, late charges, receiver expenses, protective advances, reserves, escrows, rents, taxes, insurance, or operating expenses.

**D. BP CM's own valuation shows rehabilitation potential.**

18. The Broker Opinion of Value presents an as-is combined value range of approximately $9.9 million to $10.5 million and an as-is occupancy of approximately 33%. (Ex. E.)

19. The same document presents a 90% stabilized scenario with projected net operating income of approximately $890,401 at takeover, $1,037,111 in fiscal year one, and $1,061,425 in fiscal year two. It also projects positive cash flow before debt service of approximately $890,401, $912,111, and $936,425. (Ex. E.)

20. The stabilized pricing analysis presents a combined portfolio range of approximately $13.1 million to $13.7 million. (Ex. E.)

21. The Debtor does not offer those figures as conclusive proof of present equity. They do refute the categorical assertion that stabilization, controlled sale, refinancing, or another reorganization path is necessarily futile and demonstrate why testimony from the valuation professional and production of the work file are necessary.

**E. The alleged consent is facially incomplete as proof of corporate authority.**

22. The Second Amended Consent Final Judgment states that, through consent, the parties agreed that BP CM's allegations were proven and fixes indebtedness at $16,794,016.42, including regular interest, default interest, late charges, receiver fees, a $350,000 protective advance, costs, and attorneys' fees. (Ex. D.)

23. The attached consent waives the borrowers' right to contest foreclosure and authorizes BP CM to file the consent with the proposed judgment. (Ex. D.)

24. The signature page shows Simon Markovici's signature for both entities, dated April 30, 2026. The printed Name and Title lines are blank, and no corporate authority instrument is attached. (Ex. D.)

25. BE Tampa's agreement grants managers broad authority but also imposes unanimous-manager requirements for covered actions costing $50,000 or more and member-consent restrictions for certain extraordinary acts, including confession of judgment against BE Tampa. Greenbriar's agreement separately identifies BE Tampa as sole member; Yisrael Hayum, Simon Markovici, and Pini Markovits as initial managers; C. Anthony Shippam as Independent Director; and Yisrael Hayum and Pini Markovits as Authorized Signatories for acquisition and mortgage-loan documents. (Exs. B and C.)

26. The Debtor acknowledges that Greenbriar's agreement grants broad manager authority and says an ordinary property sale is not itself a Material Action. That does not resolve this record. The challenged paper did more than arrange an ordinary sale: it confessed a $16.79 million judgment, waived all defenses, admitted every allegation, approved fees and default charges, and authorized immediate judicial sale. The absence of the original authority package and contemporaneous approvals presents disputed factual and legal issues.

## ARGUMENT

### I. BP CM has not carried its burden under 11 U.S.C. sections 362(d)(2) and 362(g).

27. Section 362(d)(2) requires proof both that the Debtor lacks equity in the property and that the property is not necessary to an effective reorganization. Under section 362(g), BP CM bears the burden on equity. See In re Kolnberger, 603 B.R. 253, 269 (Bankr. E.D.N.Y. 2019).

28. BP CM does not supply estate-specific proof. It combines Greenbriar and Union, values them as one portfolio, and asserts one combined judgment amount. Without separate property valuations and a defensible allocation of the secured claim, advances, credits, reserves, and expenses, the Court cannot determine Greenbriar's equity.

29. The Broker Opinion of Value is not supported by sworn testimony from its author. BP CM's declarant is not the valuation professional. The professional has not testified concerning qualifications, inspection, methodology, assumptions, comparables, completed renovations, separate allocations, or the Receiver's later operations.

30. At minimum, BP CM should produce a separate valuation for each property, a current payoff statement, complete loan ledger, reserve and escrow statements, property-specific advance and expense allocations, current Receiver accounting, and current separate rent rolls and occupancy reports.

**II. The Debtor has not had a reasonable opportunity to demonstrate an effective reorganization.**

31. United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 375-76 (1988), requires a reasonable possibility of a successful reorganization within a reasonable time. The showing becomes more demanding as a case progresses. Here, the Motion was filed one day after the Order for Relief was signed, before the section 341 meeting and before the Debtor could obtain records controlled by the Receiver and third parties.

32. The Debtor has not had a reasonable opportunity to obtain the Receiver's books, reconcile Greenbriar and Union, test BP CM's claim and valuation, identify reserves and credits, solicit financing or capital, obtain a controlled-sale proposal, or prepare a plan. The docket sets November 25, 2026 as the plan and disclosure-statement deadline. BP CM seeks to eliminate the principal asset before the first meeting of creditors and months before that deadline. (Ex. A.)

33. The Debtor proposes a definite process: the Receiver remains in place; complete accountings and valuation discovery are produced; the Debtor completes United States Trustee and operating-report obligations; and by a date fixed by the Court the Debtor presents a

preliminary written proposal for refinancing, capital contribution, structured sale, or other plan treatment.

34. BP CM's own stabilized model provides record evidence that the combined properties can generate substantial positive net operating income and cash flow after stabilization. That does not guarantee confirmation, but it prevents a finding at the start of this involuntary case that reorganization is categorically impossible.

**III. BP CM has not established bad faith or other cause under section 362(d)(1).**

35. Cause under section 362(d)(1) depends on the particular circumstances. Sonnax Industries, Inc. v. Tri Component Products Corp., 907 F.2d 1280, 1286 (2d Cir. 1990). Bad faith can constitute cause, but it must be supported by facts.

36. BP CM relies on In re C-TC 9th Avenue Partnership, 113 F.3d 1304, 1311 (2d Cir. 1997), including timing and intent to frustrate foreclosure. Those factors cannot simply be transplanted onto an involuntary debtor. The Debtor did not choose the petition date. BP CM presents no communication, agreement, payment, or other evidence that the Debtor solicited, directed, controlled, or colluded in David Neiman's filing.

37. BP CM's statement that the petitioning creditor may be an insider because he notarized loan documents is speculation. A notarial act does not establish control, insider status, collusion, or agreement to misuse bankruptcy. If BP CM contends the involuntary petition was collusive or defective, it may seek relief on a proper record.

38. The docket also refutes the claim that the Debtor never participated: counsel appeared and filed opposition before the Order for Relief. Any remaining corporate-authority dispute should be decided through documents and testimony, not permanent loss of the estate's asset by default. (Ex. A; Hayum Declaration.)

39. Existing collateral protection further defeats present cause. The Receiver operates the properties and controls rents. The Debtor proposes continued segregation, insurance, reporting, and no use of cash collateral without consent or order. BP CM identifies no immediate postpetition waste or diversion by the Debtor.

**IV. The consent cannot be treated as conclusive bankruptcy evidence of abandonment or inability to reorganize.**

40. The Debtor acknowledges the Florida judgment and does not ask this Court through this opposition to review or vacate that judgment. Any request to modify it will be presented to the appropriate Florida court.

41. BP CM seeks more than recognition of the judgment. It asks this Court to infer that the Debtor voluntarily abandoned the property, conceded lack of equity, admitted it could never reorganize, waived investigation of debt and fees, and acted in bad faith by remaining in Chapter 11. Those additional bankruptcy inferences are disputed.

42. BP CM should produce the original signed consent, complete signature package, all resolutions and authority documents, communications concerning preparation and execution, documents supplied to the Florida court concerning authority, and communications concerning any management dispute known to BP CM.

43. The Court can respect the Florida judgment while declining to treat disputed authority as an uncontested bankruptcy admission. The appropriate solution is to preserve the status quo, permit a prompt Florida application if appropriate, and decide stay relief on a complete record.

**V. Relief cannot be entered against BE Union LLC through a motion filed only in Greenbriar.**

44. The Motion is captioned and filed only in this Greenbriar case. BP CM's proposed order nevertheless states that it will apply with the same force in In re BE Union LLC, Case No. 1-26-42858-jmm and lift Union's stay. (Ex. F.)

45. Union is a separate debtor with a separate estate and property. Federal Rules of Bankruptcy Procedure 4001(a)(1) and 9014 require a motion, service, reasonable notice, and an opportunity to be heard before relief is entered against that estate.

46. A proposed order cannot enlarge the motion and notice into relief against another estate. All Union relief should be denied without prejudice to a separately filed and served motion supported by Union-specific evidence.

**VI. The Rule 4001(a)(4) 14-day stay must not be waived.**

47. Rule 4001(a)(4) ordinarily stays a stay-relief order for 14 days. BP CM asks to eliminate that protection and proceed immediately. (Ex. F.)

48. Waiver is unjustified because the Receiver remains in possession, material valuation and authority disputes remain, the proposed order reaches two estates, and immediate foreclosure would create irreversible consequences before review or emergency relief could be sought.

49. Even if the Court grants some stay relief, the 14-day protection should remain in effect.

**VII. Disputed facts require limited discovery and an evidentiary hearing.**

Federal Rule of Bankruptcy Procedure 9014(d) requires testimony on disputed material facts to be taken in the same manner as in an adversary proceeding. The Debtor requests narrowly tailored production and testimony concerning:

- The current payoff, complete loan ledger, default-interest calculations, late charges, fees, advances, credits, reserves, and escrows.
- Separate Greenbriar and Union Receiver accountings, bank accounts, rent rolls, occupancy, leases, collections, expenses, and cash balances.
- The Colliers work file and testimony from the valuation professional, including separate property allocations and assumptions.
- The original foreclosure-consent package, claimed authority, resolutions, approvals, and communications concerning preparation and use of the consent.

**VIII. Alternative conditional relief protects BP CM while preserving the estate.**

If the Court does not deny the Motion, the Debtor proposes:

- Adjourn final determination to September 9, 2026 or another prompt date and continue the Receiver arrangement.
- Keep all rents under Receiver control, with no Debtor use absent consent or court order.
- Require continued insurance, tenant services, ordinary expenses, preservation, and no transfer or further encumbrance.
- Require separate Greenbriar and Union accounts, ledgers, rent rolls, occupancy reports, budgets, and operating statements.
- Require a complete interim Receiver accounting and BP CM production of the current payoff, ledger, reserves, escrows, allocations, and Colliers work file.
- Allow focused depositions and permit the Debtor to supplement with valuation, authority evidence, and a preliminary restructuring, financing, capital, or controlled-sale proposal.
- Permit BP CM to renew promptly if the Debtor misses court-imposed milestones.
- Reserve all rights concerning the Florida judgment, claim amount and allocation, liens, cash collateral, adequate protection, Receiver conduct, and plan treatment.

**CONCLUSION**

The Debtor requests an order denying the Motion; denying all relief against BE Union LLC without prejudice; denying waiver of Rule 4001(a)(4); directing limited discovery and an evidentiary hearing; alternatively preserving the Receiver arrangement subject to the stated conditions; granting leave to supplement; and granting such other relief as the Court deems just.

Dated: August 19, 2026
New York, New York

Respectfully submitted,

The Law Office of Christian N. Martinez
Counsel for BE Greenbriar LLC

**/s/ Christian N. Martinez**
Christian N. Martinez
P.O. Box 3
Chester, New York 10918
Telephone: (845) 544-9189
Email: christian@cmartinez-law.com

**CERTIFICATE OF SERVICE**

I certify that on August 19, 2026, I caused the foregoing document and its attachments to be filed through the Court's CM/ECF system, which will transmit notice to registered users, including counsel for BP CM Acquisition SPV, LLC and the Office of the United States Trustee. I also caused a copy to be served by email on Joseph Lubertazzi, Jr. at jlubertazzi@mccarter.com and by first-class mail on:

David Neiman
1620 Vauxhall Road, Suite 308
Union, New Jersey 07083

**/s/ Christian N. Martinez**
Christian N. Martinez

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

--------------------------------------------------- X
In re:

**BE GREENBRIAR LLC**

Debtor.

Chapter 11
Case No. **1-26-42859-jmm**
**Objections Due: August 19, 2026**
**Hearing: August 26, 2026 at 1:30 p.m.**

--------------------------------------------------- X

**AFFIRMATION OF CHRISTIAN N. MARTINEZ IN SUPPORT OF DEBTOR'S OPPOSITION AND AUTHENTICATION OF EXHIBITS**

**AFFIRMATION**

1. I am Christian N. Martinez, counsel for BE Greenbriar LLC. I submit this affirmation under 28 U.S.C. section 1746 in support of the Debtor's opposition to BP CM Acquisition SPV, LLC's Motion for Relief from the Automatic Stay [ECF No. 16].

2. Exhibits A, D, F, G, and H are true and correct copies of records filed in this bankruptcy case or filed by BP CM as exhibits to its Motion. Exhibit A is a PACER docket history printed on August 17, 2026 and reflects filings through August 14, 2026.

3. Exhibits B and C are true and correct excerpts of the executed BE Tampa LLC and BE Greenbriar LLC operating agreements supplied to counsel for this opposition.

4. Exhibit E consists of true and correct selected pages from the Colliers Broker Opinion of Value filed by BP CM as part of ECF No. 16.

5. The docket shows that before the Order for Relief, the Debtor filed a Notice of Appearance and an Affirmation in Opposition to BP CM's motion concerning the Receiver. It also shows an interim order continuing the Receiver through September 11, 2026 and a further hearing on September 9, 2026.

6. The consent signature page in Exhibit D shows Simon Markovici's handwritten signature for both BE Greenbriar LLC and BE Union LLC, dated April 30, 2026. The printed Name and Title fields are blank, and the filed exhibit does not include a company resolution, member consent, manager vote, or Independent Director approval.

7. BP CM's proposed order, Exhibit F, would waive the 14-day stay under Rule 4001(a)(4) and purports to lift the stay in the separate BE Union LLC case.

8. The Debtor seeks a limited evidentiary process because the Receiver and third parties possess material bank, rent, occupancy, lease, expense, insurance, and management records and because BP CM's valuation combines two separate debtors and properties.

9. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief, based on the docket and identified documents.

Executed on August 19, 2026, in New York.

**/s/ Christian N. Martinez**
Christian N. Martinez

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------- X
In re:

**BE GREENBRIAR LLC**

Debtor.

Chapter 11
Case No. **1-26-42859-jmm**
**Objections Due: August 19, 2026**
**Hearing: August 26, 2026 at 1:30 p.m.**

---------------------------------------------------- X

# INDEX OF EXHIBITS TO DEBTOR'S OPPOSITION

| Exhibit | Document | Purpose |
|---|---|---|
| A | PACER Docket History through August 14, 2026 | Shows prior Debtor appearance and opposition, interim Receiver order, Order for Relief, stay-relief motion, notice, and service filing. |
| B | BE Tampa LLC Operating Agreement - Relevant Excerpts | Ownership purpose, manager authority, unanimous-manager and member-consent restrictions, Consent of the Members definition, and membership schedule. |
| C | BE Greenbriar LLC Operating Agreement - Relevant Excerpts | BE Tampa as sole member; initial managers and Independent Director; special-purpose provisions; Authorized Signatories; executed signatures; Material Action definition; ownership schedule. |
| D | Second Amended Consent Final Judgment and Attached Consent | Includes the $16,794,016.42 judgment and consent signature page with blank printed Name and Title fields. |
| E | Colliers Broker Opinion of Value - Selected As-Is and Stabilized Pages | Shows 33% as-is occupancy, as-is value range, 90% stabilized scenario, projected positive NOI and cash flow, and stabilized value range. |
| F | BP CM Proposed Stay-Relief Order | Would waive the Rule 4001(a)(4) 14-day stay and purports to grant relief in the separate BE Union case. |

| | | |
|---|---|---|
| G | Amended Notice of Hearing | Sets August 19, 2026 objection deadline and August 26, 2026 hearing. |
| H | Order for Relief under Chapter 11 | Order signed July 28, 2026 in this involuntary Chapter 11 case. |

Exhibits are selected, record-based excerpts. The Debtor reserves the right to supplement with complete documents and additional admissible evidence.

# EXHIBIT A

## PACER Docket History through August 14, 2026

Shows prior Debtor appearance and opposition, interim Receiver order, Order for Relief, stay-relief motion, notice, and service filing.

**1-26-42859-jmm** BE GREENBRIAR LLC
**Case type:** bk **Chapter:** 11 **Vol:** i **Judge:** Jil Mazer-Marino
**Date filed:** 06/08/2026 **Date of last filing:** 08/14/2026

# History

| Doc. No. | Dates | Description |
|---|---|---|
| 1 | *Filed:* 06/08/2026<br>*Entered:* 06/10/2026 | Involuntary Petition (Chapter 11) |
| | *Filed & Entered:* 06/10/2026 | Receipt Number and Filing Fee Auto |
| 2 | *Filed & Entered:* 06/10/2026 | Involuntary Summons Issued |
| 3 | *Filed & Entered:* 06/10/2026 | Court's Certificate of Mailing |
| 4 | *Filed:* 06/12/2026<br>*Entered:* 06/13/2026 | BNC Certificate of Mailing with Application/Notice/Order |
| 5 | *Filed & Entered:* 06/16/2026 | Notice of Appearance |
| 6 | *Filed & Entered:* 06/30/2026 | Motion to Authorize/Direct |
| 7 | *Filed & Entered:* 06/30/2026 | Motion to Authorize/Direct |
| 9 | *Filed:* 07/05/2026<br>*Entered:* 07/06/2026 | Involuntary Summons Service Executed |
| 8 | *Filed & Entered:* 07/06/2026 | Order to Schedule Hearing (Generic) |
| 10 | *Filed & Entered:* 07/06/2026 | Affidavit/Certificate of Service |
| 11 | *Filed:* 07/10/2026<br>*Entered:* 07/14/2026 | Notice of Appearance |
| 12 | *Filed:* 07/10/2026<br>*Entered:* 07/14/2026 | Affirmation in Opposition |
| | *Filed:* 07/13/2026<br>*Entered:* 07/14/2026 | Hearing Held and Adjourned (Case Owned BK) |
| 13 | *Filed:* 07/27/2026<br>*Entered:* 07/28/2026 | Generic Order |
| 14 | *Filed:* 07/28/2026<br>*Entered:* 07/29/2026 | Order for Relief under Chapter 11 |
| | *Filed & Entered:* 07/29/2026 | Automatic docket of credit card/debit card |
| 15 | *Filed & Entered:* 07/29/2026 | Meeting of Creditors Chapter 11 - US Trustee |
| 16 | *Filed & Entered:* 07/29/2026 | Motion for Relief From Stay |
| 17 | *Filed & Entered:* 07/29/2026 | Motion to Authorize/Direct |
| 18 | *Filed:* 07/31/2026<br>*Entered:* 08/01/2026 | BNC Certificate of Mailing with Application/Notice/Order |
| 19 | *Filed & Entered:* 08/04/2026 | Amended Notice of Motion/Presentment |
| 20 | *Filed & Entered:* 08/05/2026 | Amended Notice of Motion/Presentment |
| 21 | *Filed:* 08/07/2026<br>*Entered:* 08/08/2026 | BNC Certificate of Mailing - Meeting of Creditors |
| 22 | *Filed & Entered:* 08/14/2026 | Affidavit/Certificate of Service |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/17/2026 08:43:02 | | | |
| **PACER Login:** | breslov1 | **Client Code:** | |
| **Description:** | History/Documents | **Search Criteria:** | 1-26-42859-jmm Type: History |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# EXHIBIT B

## BE Tampa LLC Operating Agreement - Relevant Excerpts

Ownership purpose, manager authority, unanimous-manager and member-consent restrictions, Consent of the Members definition, and membership schedule.

# LIMITED LIABILITY COMPANY AGREEMENT

# OF

# BE TAMPA LLC

---

**THIS LIMITED LIABILITY COMPANY AGREEMENT** (this "***Agreement***") of **BE TAMPA LLC,** a Florida limited liability company (the "***Company***"), is made and entered into as of **November ____, 2021** by and among **Yisrael (Isaac) Hayum, Simon Markovici and Pini Markovits,** individuals (collectively "***Boone Manager***") and the parties listed on Schedule A annexed hereto (collectively, the "***Members***"). The term "Member" or "Members" as used in this Agreement shall refer individually or jointly, as applicable, to each Member, and any other Person admitted to the Company as a member pursuant to the terms hereof.

## RECITALS:

**WHEREAS**, the Members have caused the Company to be formed as a Florida limited liability company under the provisions of the Florida Limited Liability Company Act, (the "***LLC Act***"), pursuant to the filing of the Certificate of Formation of the Company (the "***CoF***") with the Office of the Secretary of State of the State of Florida (the "***Secretary of State***") on November 18, 2021; and

**WHEREAS** in furtherance of the foregoing, the Members now desire to enter into this Agreement, in order to (i) confirm the admission of the Members as Members of the Company and the issuance by the Company of Units to the Members, (ii) establish the manner in which the business and affairs of the Company shall be managed by Managers (as such term is defined in Section 5.1 below), and (iii) determine their rights, duties and obligations with respect the Company, the Managers and each other.

**NOW, THEREFORE,** the Members hereby, by their execution of this Agreement, hereby agree as follows:

## ARTICLE I

## Definitions; Rules of Construction

### 1.1 Defined Terms.

Terms used with initial capital letters, which are not otherwise defined in the body of this Agreement, shall have the meanings given to them in Article XII and/or in *Schedule 1.1* attached hereto and incorporated by reference herein.

### 1.2 Rules of Construction.

**2.3 Registered Agent, Registered Office, Principal Office.**

The present address of the Company and the registered office of the Company in the State of Florida and its registered agent for service of process in Florida shall be Joseph Rosenwasser, with an address at C/O Meadow Wood Property Company, 4014 Gunn Highway, Suite 270, Tampa, FL 33618. The Manager may at any time and from time to time change the location of the Company's registered and principal office and the identity of the registered agent and shall give due notice of any such change to the Members.

**2.4 Purposes.**

The sole purpose of the Company shall be to (i) own 100% of the membership interest in (a) BE Greenbriar LLC ("***Greenbriar Fee Owner***") the fee owner of the real property located at 13214 Bunn Circle Tampa, Florida 33612 (the "***Greenbriar Property***"), and (b) BE Union LLC ("***Union Fee Owner"*** and together with Greenbriar Fee Owner, individually and collectively, as the context requires, the "***Fee Owner***") the fee owner of the real property located at 2301 E. Sligh Ave, Tampa, Florida 33610 (the "***Union Property***" and together with Greenbriar Property, individually and collectively, as the context requires, the "***Property***"), which Property is more particularly described in those certain Purchase and Sale Agreements between Wynkoop Greenbriar, LLC and Wynkoop Homestead Fund VI, LLC, as seller, and Fee Owner's (as applicable) predecessor in interest via assignment, Boone Equities, as purchaser, each entered into as of August 16, 2021 (as amended and/or assigned, individually and collectively, as the context requires the "***Purchase Agreement***"), (ii) directly or indirectly (via its membership interest in Fee Owner), acquire, lease, own, develop, use and operate the Property, (iii) directly or indirectly (via its membership interest in Fee Owner), execute, deliver and perform any and all agreements or obligations relating to the Property, the acquisition thereof, and any loans, now or hereafter, in connection therewith, including without limitation, obtaining that certain loan provided by WALKER & DUNLOP COMMERCIAL PROPERTY FUNDING, LLC, a Delaware limited liability company, having an address at 1 Vanderbilt Avenue, Suite 3300, New York, New York 10017 ("***Lender***") to Fee Owner in the approximate aggregate principal amount of $14,250,000.00 (the "***Loan***"), which Loan is evidenced by promissory notes and various other related loan documents (collectively, the "***Loan Documents***"), (iv) directly or indirectly (via its membership interest in Fee Owner) take any and all other action necessary to maintain the existence of the Company and/or Fee Owner as a limited liability company in good standing under the laws of the State of Florida and the State where the Property is located, and (iv) directly or indirectly (via its membership interest in Fee Owner) make, enter into, perform and carry out any arrangements, contracts or agreements consistent with the foregoing and to do any and all things necessary or incidental to any of the foregoing to carry out and further the business of the Company and/or Fee Owner.

**2.5 Term.**

The Company shall have perpetual existence, *provided, however*, the Company may be dissolved in accordance with the provisions of this Agreement or by operation of law. The existence of the Company as a separate legal entity will continue until cancellation of the Certificate in the manner required by the LLC Act.

thereto into account) and (y) during any time that the Excess Capital is equal to zero, in accordance with the number of Units held by the Members at such time.

## ARTICLE V

## Management; Rights Powers and Duties of Members

### 5.1 Management of Business and Affairs of the Company.

A. MANAGER. Except as otherwise specifically provided in this Agreement, the management and control of the business and affairs of the Company shall be vested in a manager (the "***Manager***" or ***"Managers"***) selected to be the manager of the Company from time to time by the Members. The Manager need not be a Member. The Members hereby designate and appoint Boone Manager to serve as the initial Manager. Notwithstanding anything to the contrary in this Agreement, so long as any obligation is outstanding under the Loan Documents, Lender's consent may be required to replace Boone Manager as the manager of the Company.

B. NATURE OF MANAGER. The Manager may be a Person who shall hold office until its successor is elected or appointed and qualified, or until its earlier resignation or removal.

C. REMOVAL OF MANAGER; RESIGNATION. Subject in all events to the terms of the Loan Documents, the Manager may only be removed from office by the Consent of the Members but only for (i) gross negligence, willful misconduct or fraud of the Manager, including, without limitation, theft, embezzlement or material misrepresentations or concealments on any written reports, (ii) material breach by Manager of its obligations under this Agreement, (iii) bankruptcy, insolvency or inability of the Manager to meet its obligations as the same come due, (iv) adjudication by a court of competent jurisdiction of the Manager as an incompetent; (v) the failure of such Manager to substantially and satisfactorily perform its fiduciary duties assigned by the Company as determined by a non-appealable court of competent jurisdiction, or (vi) a Manager's conviction of, or plea of nolo contendere to, any felony or to any crime or offense involving acts of theft, fraud, embezzlement or similar conduct. A Manager may resign by written notice to the Company at the address provided for in Section 2.3 hereof, which resignation shall, unless otherwise specified in the resignation notice, be effective upon the appointment of a successor Person to act as Manager by the Consent of the Members.

D. VACANCY OF MANAGER. In the event of a vacancy in the position of manager of the Company (either as a result of resignation or removal of the current Manager), the Members, by Consent of the Members, shall elect a successor to fill a vacancy of the Manager.

E. OMIT.

F. EXPENSES. The Manager shall be reimbursed by the Company for all reasonable out-of-pocket expenses incurred by it in connection with its services (including, without limitation, all reasonable travel and accommodation expenses).

G. DUE DILIGENCE FEE. The Company shall cause the Fee Owner (without duplication of the payment set forth in the Fee Owner's Operating Agreement) to pay to Yisrael Hayum and Pini Markovits the Acquisition Fee (as hereinafter provided) at closing, out of the closing proceeds. The "***Acquisition Fee***" shall equal 1% of the total purchase price of the Property.

**5.2 Action by Manager; Authority of the Manager.**

A. Subject to the provisions contained in this Article V and any other provision contained in this Agreement which requires the consent or approval of one or more Members, the Managers shall have the exclusive power and authority to manage the business and affairs of the Company and to make all decisions with respect thereto. Except as otherwise expressly provided in this Agreement, the Managers or Persons designated by the Managers, including officers and agents appointed by the Managers, shall be the only Persons authorized to execute documents which shall be binding on the Company. To the fullest extent permitted by Florida law, but subject to any specific provisions hereof granting rights to Members, the Managers shall have the power to do any and all acts, statutory or otherwise, with respect to the Company or this Agreement, which would otherwise be possessed by the Members under the laws of the State of Florida and the Members shall have no power whatsoever with respect to the management of the business and affairs of the Company.

B. Managers Authority. The power and authority granted to the Manager hereunder shall include all those necessary or convenient for the furtherance of the purposes of the Company and shall include the power to make all decisions with regard to the management, operations, assets, financing and capitalization of the Company, without the need to obtain consent of any of the Members (unless otherwise expressly set forth herein) including without limitation, the power and authority to undertake and make decisions concerning, directly or indirectly: (a) hiring and firing of employees, attorneys, accountants, brokers, investment bankers and other advisors and consultants, (b) entering into leases for real or personal property, (c) opening bank and other deposit accounts and operations thereunder, and depositing/withdrawing funds therefrom, (d) purchasing, encumbering, or selling the Property or interests therein, (e) purchasing insurance, goods, supplies, equipment, materials and other personal property used in connection with the Property, (f) borrowing money, including without limitation, the Loan, obtaining of credit, issuance of notes, including, without limitation, the Note, debentures, securities, equity or other interests of or in the Company and securing of the obligations undertaken in connection therewith with mortgages, including, without limitation the Mortgage, on and security interest in all or any portion of the real or personal property of the Company, (g) executing on behalf of the Company all instruments and documents, including without limitation the Purchase Agreement and the Loan Documents, and causing the Company to comply with the terms thereof and any further instructions from Lender (h) giving guarantees and indemnities in connection with loans to the Company, (i) entering into contracts or agreements in the ordinary course of business, (j) dissolution, (k) the sale, financing, refinancing or lease of all or any portion of the assets of the Company, including without limitation the Property, (l) compromising, arbitrating, adjusting and litigating claims in favor of or against the Company, (m) entering into a 1031 Transaction, (n) constructing, improving, developing and maintaining the Property, (m) Omit, (n) obtaining D&O insurance and similar insurances as

determined by Managers, and (o) all other acts or activities necessary or desirable for the carrying out of the purposes of the Company and all without further consent or resolution whatsoever. Notwithstanding anything to the contrary contained herein, unanimous consent of the Managers shall be required for any of the foregoing, to the extent the cost of such action shall be $50,000.00 or more.

C. The Members hereby consent and agree for the Company to cause Fee Owner to refinance the Property at a future date and obtains a new loan (with the same or a different lender), and in connection therewith, the Members hereby approve and consent to the Manager entering into such new loan with a lender, and to execute any and all documents on behalf of the Company and/or Fee Owner in connection with such new loan, without the need of any further approval from the Members (which consent is hereby deemed given); provided, however, that unanimous consent of the Managers shall be necessary for any refinance. Additionally, the Members explicitly hereby consent to any amendments to this Agreement in connection with such new loan, including without limitation adding/replacing the definition of "Lender", and "Loan" (and the like), incorporating lender comments, and replacing Article XII.

D. Restrictions on Manager's Authority. Notwithstanding any provision of this Agreement to the contrary, neither the Company, nor the Manager, nor the Members shall have authority to cause or to take any of the following actions or decisions without the Consent of the Members:

(i) (A) file any voluntary petition in bankruptcy on behalf of the Company, (B) consent in writing to the filing of any involuntary petition in bankruptcy against the Company, (C) file any petition seeking, or consenting to, reorganization or relief under any applicable federal, state or foreign law relating to bankruptcy or insolvency, on behalf of the Company;

(ii) amending the Company's certificate of formation or this Agreement in a manner which adversely affects any Member, provided however that the Managers shall be authorized (without the consent of the Members) to (a) amend *Schedule A* to reflect changes in the ownership of the Company pursuant to the provisions of this Agreement, and (b) amend this Agreement to incorporate revisions required by any lender making a loan to the Company;

(iii) use or permit any other person or entity to use Company funds or assets in any manner except for the exclusive benefit of the Company;

(iv) alter the primary purpose of the Company;

(v) sell or lease to the Company any real property in which the Manager or any of its Affiliate has any interest without the Consent of the Members;

(vi) admit another person or entity as a Manager without the Consent of the Members;

(vii) reinvest Available Cash in any additional properties other than the Property;

(viii) confess a judgement against the Company in connection with any threatened or pending legal action with the Consent of the Members;

(ix) commingle the Company funds with those of any other person or entity;

(x) Directly or indirectly pay or award any finder's fees or commissions to any person or entity which in the aggregate would exceed customary finder's fees/commissions;

(xi) merge, combine or "roll-up" the Company into a partnership, limited liability Company, or other entity or participate in an UPREIT, DOWNREIT or similar transaction with a real estate investment trust or other entity without a Majority Vote of the voting Members; or

(xii) amending Section 5.3;

(xiii) require any Capital Contribution except as provided in Section 3.2 hereof, or exercise any option to repurchase any Member's interest except as expressly set forth herein;

(xiv) Acquire by purchase, ground lease, or otherwise, any real or personal tangible property other than the Property or items necessary for the operation or management of the Property;

(xv) Enter into a ground lease of the entire Property;

(xvi) Undertake any action the costs of which would exceed the greater of (x) $250,000.00 (other than in connection with work required to be performed by Fee Owner pursuant to the terms of the Loan Documents) and (y) the amount set forth in the budget approved by the Members; or

(xvii) Transfer the Manager's interest, or install a substitute Manager.

E. Responsibilities of the Manager. In connection with the exercise of the Manager's authority, the Manager shall:

(i) Have a fiduciary responsibility for the safekeeping and use of all the funds and assets of the Company;

(ii) Devote such of his (or if applicable, of its officers', agents' or employees' time and efforts to the business of the Company as the Manager shall in his (or if applicable, in its authorized officers', agents' or employees') discretion, exercised in good faith, determine to be necessary to conduct the business of the Company;

"***Consent of the Members***" means the prior unanimous written consent of Members (voting as a single class) holding at least fifty-five percent (55%) of the issued and outstanding Units (regardless of class) in the Company.

"***Depreciation***" means, for each Fiscal Year, an amount equal to the depreciation, amortization, or other cost recovery deduction allowable for federal income tax purposes with respect to an asset for such Fiscal Year, except that if the Gross Asset Value of an asset differs from its adjusted basis for federal income tax purposes at the beginning of such Fiscal Year, Depreciation shall be an amount that bears the same ratio to such beginning Gross Asset Value as the federal income tax depreciation, amortization, or other cost recovery deduction for such Fiscal Year bears to such beginning adjusted tax basis, provided, however, that if the adjusted basis for federal income tax purposes of an asset at the beginning of such Fiscal Year is zero, Depreciation shall be determined with reference to such beginning Gross Asset Value using any reasonable method selected by the Managers.

"***Economic Risk of Loss***" means the economic risk of loss within the meaning of Regulations Section 1.752-2.

"***Emergency Expenditures***" means payments required to be made by the Company to (a) avoid or minimize the imminent threat of (i) loss or impairment of life or personal injury, (ii) material damage to the Property or (iii) material impairment of the security given for any Loan, (b) to pay real estate taxes, utility expenses, and insurance premiums with respect to the Property, or (c) avoid or minimize the threat of any reasonably foreseeable material default or event of default (as such terms or similar terms, whether or not capitalized, are used in any Loan Documents) or to reinstate any Loan upon a Loan default, but in no event in order to repay any Manager or Member for any payment made under a Loan guaranty.

"***Encumbrance***" means any security interest, pledge, mortgage, lien (including environmental and tax liens), charge, encumbrance, adverse claim, preferential arrangement, or restriction of any kind, including, without limitation, any restriction on the use, voting, transfer, receipt of income, or other exercise of any attributes of ownership.

"***Entity***" means any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, cooperative or association or other legal entity or organization.

"***Excess Capital***" means as of any given time, the amount of excess, if any, of the aggregate Invested Capital of a Member in excess of such Member's proportionate share of the Invested Capital of all of the Members.

"***Excess Payment***" means the amount paid by any Member (or its Affiliate) under a guaranty of any loan to the Company to the extent such amount paid exceeds such Member's Proportionate Guaranty Obligation.

***"Family Member"*** means with respect to any Person, (x) any family member of

**LIMITED LIABILITY COMPANY AGREEMENT OF**

**BE TAMPA LLC**

Members, Capital Contributions and Units

Schedule A

| **AS OF December 15, 2021** | | | |
|---|---|---|---|
| Name of Member | Number of Units | Name of Member | Number of Units |
| Yisrael Hayum | 4.64 | Zisha Green | 3.65 |
| Simon Markovici | 4.89 | Isaac Markovits | 2.74 |
| Pinchas Markovits | 3.9 | Michael Jacobowitz | 1.83 |
| Aron Goldklang | 4.92 | Zisha Jacobowitz | 1.83 |
| DYK Realty Holdings LLC | 3.65 | Tzvi Fisher | 1.37 |
| David Hayum | 8.82 | Mendy Markovits | .91 |
| Martin Wesel Family 2014 Trust | 1.83 | Efraim Gordon | .91 |
| Eliyahu Y. Laufer | .91 | Chaim Leib Perlstein | .46 |
| Yitzchok Frankel | 4.56 | Robert Izsak | 8.21 |
| Rivka Frankel | 4.56 | Andres and Veronica Iszak Family Trust | 8.21 |
| YCIF LLC | 9.13 | Yisroel Lauber | 9.13 |
| Rafael J Friedman | .91 | Gavriel Bauer | 1.83 |
| Tampa Properties FL LLC | 3.65 | Motty Altman | 1.83 |
| Chava Banash | .73 | **TOTAL** | **100** |

CAPITAL CONTRIBUTIONS/UNITS

SCHEDULE A TO BE TAMPA LLC OPERATING AGREEMENT

# EXHIBIT C

## BE Greenbriar LLC Operating Agreement - Relevant Excerpts

BE Tampa as sole member; initial managers and Independent Director; special-purpose provisions; Authorized Signatories; executed signatures; Material Action definition; ownership schedule.

# LIMITED LIABILITY COMPANY AGREEMENT
# OF
# BE GREENBRIAR LLC

This Limited Liability Company Agreement (together with the schedules attached hereto, this "Agreement") of BE GREENBRIAR LLC, a Florida limited liability company (the "Company"), effective as of December 16, 2021 by BE TAMPA LLC, a Florida limited liability company, as the sole equity member (the "Member") and C. Anthony Shippam, as an Independent Director (as defined on Schedule A hereto) and springing member. Capitalized terms used and not otherwise defined herein have the meanings set forth on Schedule A hereto.

The Member, by execution of this Agreement, hereby forms the Company as a limited liability company pursuant to and in accordance with the Florida Limited Liability Company Act, as amended from time to time (the "Act"), and this Agreement, and the Member and Independent Director hereby agree as follows:

Section 1. Name.

The name of the limited liability company formed hereby is BE GREENBRIAR LLC.

Section 2. Principal Business Office.

The principal business office of the Company shall be located at 6 Boone Street Staten Island NY 10314 or such other location as may hereafter be determined by the Member.

Section 3. Registered Office.

The address of the registered office of the Company in the State of Florida is c/o Meadow Wood Property Company, 4014 Gunn Highway, Suite 270, Tampa, FL 33618.

Section 4. Registered Agent.

The name and address of the registered agent of the Company for service of process on the Company in the State of Florida is Joseph Rosenwasser, with an address at C/O Meadow Wood Property Company, 4014 Gunn Highway, Suite 270, Tampa, FL 33618.

Section 5. Member.

(a) The mailing address of the Member is set forth on Schedule B attached hereto. The Member was admitted to the Company as a member of the Company upon its execution of a counterpart signature page to this Agreement.

Section 6. Certificates.

Joseph Rosenwasser is hereby designated as an "authorized person" within the meaning of the Act, and has executed, delivered and filed the Certificate of Formation of the Company with the Secretary of State of the State of Florida. Upon the filing of the Certificate of Formation with the Secretary of State of the State of Florida, his powers as an "authorized person" ceased, and the

Member thereupon became the designated "authorized person" and shall continue as the designated "authorized person" within the meaning of the Act. The Member or the Manager shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any other jurisdiction in which the Company may wish to conduct business.

The existence of the Company as a separate legal entity shall continue until cancellation of the Certificate of Formation as provided in the Act.

Section 7. Purposes.

(a) Notwithstanding any provision hereof to the contrary, the following shall govern: The nature of the business and of the purposes to be conducted and promoted by the corporation, is to engage solely in the following activities:

(i) To acquire and to own that certain parcel of real property located at 13214 Bunn Circle Tampa, Florida 33612, together with all improvements located thereon (the "Property").

(ii) To own, hold, operate, develop, lease, mortgage, pledge and otherwise deal with the Property.

(iii) To exercise all powers enumerated in the Act necessary or convenient to the conduct, promotion or attainment of the business or purposes otherwise set forth herein.

(b) The Company is hereby authorized to execute, deliver and perform, and the Manager or any of the Authorized Signatories (as hereinafter defined in Section 11), acting alone, on behalf of the Company is hereby authorized to execute and deliver, (i) the Basic Documents and all documents, agreements, certificates, or financing statements contemplated thereby or related thereto, and (ii) all contracts, agreements, documents, instruments, certificates, affidavits and indemnities of any kind or nature whatsoever related to the Loan and the acquisition of the Property, and may pay all costs in connection therewith, all without any further act, vote or approval of any other Person notwithstanding any other provision of this Agreement or the Act. The foregoing authorization shall not be deemed a restriction on the powers of the Member or the Manager to enter into other agreements on behalf of the Company. Any and all of the foregoing documents and any other documents authorized to be executed and delivered by the Company in accordance with this Agreement may be executed and delivered on behalf of the Company by the Manager, acting alone, and any such document so executed and delivered shall be binding upon the Company.

Section 8. Powers.

Subject to Section 9(f), the Manager, acting alone on behalf of the Company, (i) shall have and exercise all powers necessary, convenient or incidental to accomplish the purposes as set forth in Section 7, including without limitation, the right to sell, assign or transfer the Property, and (ii) shall have and exercise all of the powers and rights conferred upon limited liability companies formed pursuant to the Act.

Section 9. Management.

(a) Manager. Subject to Section 9(f), the business and affairs of the Company shall be managed by or under the direction of the Manager designated by the Member. The authorized number of Managers may be increased or decreased by the Member at any time in its sole and absolute discretion, upon notice to the Managers, and subject in all cases to Section 10. The initial number of Managers shall be three (3). Any Manager elected, designated or appointed by the Member shall hold office until a successor is elected and qualified or until such Manager's earlier death, resignation, expulsion or removal. A Manager need not be a Member. The initial Manager designated by the Member are the following individuals: Yisrael Hayum, Simon Markovici and Pini Markovits. The initial number of Independent Directors shall be one (1). The initial Independent Director and springing member designated by the Member is C. Anthony Shippam.

(b) Powers. Subject to Section 9(f), the Manager, acting alone, shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise. Subject to Sections 7 and 9(f), the Manager, acting alone, has the authority to bind the Company.

(c) Compensation. The Manager shall be reimbursed for any expenses incurred by it in such capacity to the extent approved by the Member. Additionally, Manager (or its affiliate, designee, successor and/or assign) shall receive the below mentioned compensation for services rendered to the Company in its capacity as manager. Nothing in the foregoing sentence shall be construed as to prohibit the Independent Director from being appropriately compensated for their services to the Company.

(i) a one-time acquisition fee to be paid to Yisrael Hayum and Pini Markovits (to be paid simultaneous with, or immediately following, the acquisition of the Property by the Company), in an amount equal to one percent (1%) of the total purchase price of the Property (the "**Acquisition Fee**");

(d) Removal of a Manager. Unless otherwise restricted by law, a Manager may be removed or expelled, with or without cause, at any time by the Member, and, subject to Section 10, any vacancy caused by any such removal or expulsion may be filled by action of the Member.

(e) Manager as Agent. To the extent of its powers set forth in this Agreement and subject to Section 9(f), the Manager is an agent of the Company for the purpose of the Company's business, and the actions of the Manager, acting alone, taken in accordance with such powers set forth in this Agreement shall bind the Company.

(f) Limitations on the Company's Activities.

(i) This Section 9(f) is being adopted in order to comply with certain provisions required in order to qualify the Company as a "special purpose" entity.

(ii) Notwithstanding anything to the contrary in this Agreement or in any other document governing the formation, management or operation of the Company, and any provision of law that so empowers the Company, for so long as any Obligation is outstanding, neither the Member nor the Manager

shall amend, alter, change or repeal Sections 5(c), 7, 8, 9, 10, 16, 20, 21, 22, 23, 24, 25, 26, 29, 31, 35, Schedule A or Schedule C (the "Special Purpose Provisions"), or any other provision of this or any other document governing the formation, management or operation of the Company in a manner that is inconsistent with any of the Special Purpose Provisions of this Agreement without Lender's prior written consent. Subject to this Section 9(f), the Member reserves the right to amend, alter, change or repeal any provisions contained in this Agreement in accordance with Section 31. In the event of any conflict between any of the Special Purpose Provisions and any other provision of this or any other document governing the formation, management or operation of the Company, the Special Purpose Provisions shall control.

(iii) Omit

(iv) The Manager and the Member shall cause the Company to do or cause to be done all things necessary to preserve and keep in full force and effect its existence, rights (charter and statutory) and franchises; provided, however, that the Company shall not be required to preserve any such right or franchise if: (1) the Manager shall determine that the preservation thereof is no longer desirable for the conduct of its business and that the loss thereof is not disadvantageous in any material respect to the Company and (2) the Rating Agency Condition is satisfied. Notwithstanding anything to the contrary in this Agreement or in any other document governing the formation, management or operation of the Company, until such time as the Loan is indefeasibly paid in full, the Manager also shall cause the Company to abide by all terms and conditions on Schedule C.

Section 10. Guarantor Fee. In consideration for Aron Goldklang ("**Aron**") becoming a guarantor for the Loan, Members agree to compensate Aron a one-time guarantor fee, in an aggregate amount equal to one and one-half percent (1.5%) of the total purchase price of the Property (the "**Guarantor Fee**").

Section 11. Independent Director.

At all times at which the Members of the Company shall take, or shall be required to take, any action in such capacity and for so long as the Loan remains outstanding until paid in full, there shall be one (1) Independent Director; and the Company will not take any Material Action without the prior unanimous written consent of the Members and Managers and the Independent Director. And unless, at the time of such action, there shall be one (1) Independent Director who shall have participated in such vote and consented to the taking of such Material Action. To the fullest extent permitted by law, and notwithstanding any duty otherwise existing at law or in equity, the Independent Director shall consider only the interests of the Company, including the Company's creditors, in acting or otherwise voting on Material Actions (which such duties to the Company, in each case, shall be deemed to apply solely to the extent of their respective economic interests in the Company exclusive of (x) all other interests (including, without limitation, all other interests of the Members), (y) the interests of other Affiliates of the Members and the Company, and (z) the

interests of any group of Affiliates of which the Members or the Company is a part)). No resignation or removal of an Independent Director, and no appointment of a successor Independent Director, shall be effective until such successor shall have accepted his or her appointment as an Independent Director by executing a counterpart to this Agreement. In the event of a vacancy in the position of Independent Director, the Member shall, as soon as practicable, appoint a successor Independent Director.

Notwithstanding any other provision of this Agreement or any other documents governing the formation, management, or operation of the Company and notwithstanding any provision of law that otherwise so empowers the Company, the Member, the Manager or any other Person, for so long as the Loan or any portion thereof remains outstanding, neither the Member nor the Manager nor any other Person shall be authorized or empowered, nor shall they permit the Company, without the prior unanimous written consent of the Members and Managers and the Independent Director, to take any Material Action.

For so long as the Loan or any portion thereof remains outstanding, the Lender shall be an intended third-party beneficiary of this Agreement with respect to Section 10.

Section 12. Authorized Signatory.

The Member hereby acknowledges and agrees that each of the following individuals YISRAEL HAYUM and PINI MARKOVITS (each, an "**Authorized Signatory**"), are each individually empowered to do all acts necessary to effectuate the acquisition and obtaining the mortgage loan of the Property, without the joinder of any other person or entity, including without limitation, the entering into the purchase agreement for the purchase of the Property and other related documents, and the execution of the Basic Documents, and any items related to any of the foregoing.

Section 13. Limited Liability.

Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and neither the Member nor the Manager nor any Independent Director shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, Manager or Independent Director of the Company.

Section 14. Capital Contributions.

The Member has contributed to the Company property of an agreed value as listed on Schedule B attached hereto.

Section 15. Additional Contributions.

The Member is not required to make any additional capital contribution to the Company. However, the Member may make additional capital contributions to the Company at any time upon the written consent of such Member. To the extent that the Member makes an additional capital contribution to the Company, the Member shall revise Schedule B of this Agreement.

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, have duly executed this Limited Liability Company Agreement.

**MEMBER**:

BE TAMPA LLC

By: ________________________
Name: YISRAEL HAYUM
Title: Authorized Signatory

**MANAGER**:

________________________
YISRAEL HAYUM, an individual

*Pinchas Markovits*
PINI MARKOVITS, an individual

________________________
SIMON MARKOVICI, an individual

**INDEPENDENT DIRECTOR/SPRINGING MEMBER**:

________________________
Name: C. Anthony Shippam

# SCHEDULE A

## Definitions

A. Definitions

When used in this Agreement, the following terms not otherwise defined herein have the following meanings:

"Act" has the meaning set forth in the preamble to this Agreement.

"Affiliate" shall mean, as to any Person, any other Person that, directly or indirectly, is in Control of, is Controlled by or is under common Control with such Person or, with respect to any natural Person, is a member of the Family Group (as defined in the Loan Agreement) of such Person.

"Agreement" means this Limited Liability Company Agreement of the Company, together with the schedules attached hereto, as amended, restated or supplemented or otherwise modified from time to time.

"Approved ID Provider" shall mean each of CT Corporation, Corporation Service Company, National Registered Agents, Inc., Wilmington Trust Company, Stewart Management Company and Lord Securities Corporation; provided, that, (A) the foregoing shall be deemed Approved ID Providers unless and until disapproved by any Rating Agency and (B) additional national providers of Independent Directors may be deemed added to the foregoing hereunder to the extent approved in writing by Lender and the Rating Agencies.

"Bankruptcy Action" means, with respect to any Person, (a) file or consent to the filing of any petition, either voluntary or involuntary, to take advantage of any Creditors Rights Laws, (b) seek or consent to the appointment of a receiver, liquidator or any similar official, (c) take any action that might cause such entity to become insolvent, (d) make an assignment for the benefit of creditors or (e) take any Material Action with respect to Company.

"Basic Documents" means this Agreement and the Loan Documents and all documents and certificates contemplated thereby or delivered in connection therewith executed by the Company.

"Certificate of Formation" means the Certificate of Formation of the Company filed with the Secretary of State of the State of Florida on November 18, 2021, as amended or amended and restated from time to time.

"Company" means BE GREENBRIAR LLC, a Florida limited liability company.

"Control" shall mean the power to direct the management and policies of an entity, directly or indirectly, whether through the ownership of voting securities or other beneficial interests, by contract or otherwise. The terms "Controlled" and "Controlling" shall have correlative meanings.

"Covered Persons" has the meaning set forth in Section 20(a).

"Creditors Rights Laws" shall mean any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization, conservatorship, arrangement, adjustment, winding-up, liquidation, dissolution, composition or other relief with respect to its debts or debtors.

"Debt" shall mean, as of any date, the outstanding principal balance of the Loan.

"Independent Director" shall mean a natural person who (a) is not (at the time of initial appointment as director or manager, or at any time while serving as a director or manager), has never been, and will not be (at any time while serving as a director or manager): (i) a stockholder, partner, member or other equity owner, director (with the exception of serving as the Independent Director of Principal), officer, employee, attorney or counsel of Borrower, Guarantor or any Affiliate of Borrower or Guarantor, (ii) a customer, supplier or other Person who derives any of its purchases or revenues from its activities with Borrower, Guarantor or any Affiliate of Borrower or Guarantor, (iii) a Person Controlling or under common Control with any such stockholder, partner, member or other equity owner, director, officer, customer, supplier or other Person, (iv) a member of the immediate family of any such stockholder, partner, member, equity owner, director, officer, employee, manager, customer, supplier or other Person, or (v) otherwise affiliated with Borrower, Guarantor or any stockholder, member, partner, director, officer, employee, attorney or counsel of Borrower or any Guarantor, and (b) has (i) prior experience as an independent director or independent manager for a corporation, a trust or a limited liability company whose charter documents required the unanimous consent of all independent directors or independent managers thereof before such corporation, trust or limited liability company could consent to the institution of bankruptcy or insolvency proceedings against it or could file a petition seeking relief under any applicable Federal or state law relating to bankruptcy and (ii) at least three (3) years of employment experience with one or more nationally-recognized professional service companies that provides, inter alia, professional independent directors or independent managers in the ordinary course of their respective business to issuers of securitization or structured finance instruments, agreements or securities or lenders originating commercial real estate loans for inclusion in securitization or structured finance instruments, agreements or securities and is at all times during his or her service as an Independent Director of Borrower an employee of such a company or companies. A natural person who otherwise satisfies the foregoing definition other than subclause (a)(i) of this definition by reason of being the Independent Director of a Special Purpose Entity affiliated with Borrower shall not be disqualified from serving as an Independent Director of Borrower, provided that the fees that such individual earns from serving as Independent Director of affiliates of Borrower in any given year constitute in the aggregate less than five percent (5%) of such individual's annual income for that year.

"Lender" means WALKER & DUNLOP COMMERCIAL PROPERTY FUNDING, LLC, a Delaware limited liability company, having an address at 1 Vanderbilt Avenue, Suite 3300, New York, New York 10017, together with its successors and/or assigns.

"Loan" means that certain loan in the approximate amount of $14,250,000.00 to be made by Lender to the Company in accordance with the terms, conditions and provisions of the Loan Documents.

"Loan Agreement" shall mean that certain Loan Agreement dated December 16, 2021 between the Company and Lender.

"Loan Documents" shall mean the Loan Agreement, Note and the mortgage securing the Loan and any and all guarantees, indemnities, certificates, agreements and other documents contemplated thereby or otherwise delivered to Lender in connection with the Loan.

"Manager" means Yisrael Hayum, Simon Markovici and Pini Markovits, as the initial managers of the Company, and includes any Person admitted as a manager of the Company in accordance with Section 9 of this Agreement.

"Material Action" means to consolidate or merge the Company with or into any Person, or sell all or substantially all of the assets of the Company other than in connection with a sale of the Property, which for clarification purposes such sale (of the Property and related assets of the Company) shall not be considered a Material Action, or to institute proceedings to have the Company be adjudicated bankrupt or insolvent, or consent to the institution of bankruptcy or insolvency proceedings against the Company or to file a petition seeking, or consent to, reorganization or relief with respect to the Company under any applicable federal or state law relating to bankruptcy, or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the Company or a substantial part of its property, or make an assignment for the benefit of creditors of the Company, or admit in writing the Company's inability to pay its debts generally as they become due, or take action in furtherance of any such action, or, to the fullest extent permitted by law, dissolve or liquidate the Company.

"Member" means BE TAMPA LLC, a Florida limited liability company, as the initial member of the Company, and includes any Person admitted as an additional member of the Company or a substitute member of the Company pursuant to the provisions of this Agreement, each in its capacity as a member of the Company.

"Note" shall mean that certain Promissory Note from the Company to Lender in the original principal amount of the Loan.

"Obligations" shall mean the indebtedness, liabilities and obligations of the Company under or in connection with the Loan Documents or any related document in effect as of any date of determination.

"Organizational Documents" means the Certificate of Formation, this Agreement and any other organizational documents of the Company, as each may be amended, restated or supplemented or otherwise modified from time to time.

"Person" shall mean any individual, corporation (including a business trust), partnership, joint venture, joint stock company, limited liability company, estate, trust, unincorporated association, any federal, state, county or municipal government or any bureau, department, political subdivision or agency thereof and any other entity and, in each case, any fiduciary acting in such capacity on behalf of any of the foregoing.

"Property" shall mean the land located at 13214 Bunn Circle, Tampa, Florida 33612, together with all improvements thereon;

"Rating Agency(ies)" shall mean each of S&P, Moody's, Fitch and any other nationally-recognized statistical rating agency designated by Lender (and any successor to any of the foregoing) in connection with and/or in anticipation of any Secondary Market Transaction.

"Rating Agency Condition" shall be deemed to exist if (i) any Rating Agency fails to respond to any request for a Rating Agency Confirmation with respect to any applicable matter or otherwise elects (orally or in writing) not to consider any applicable matter or (ii) Lender (or its Servicer) is not required to and/or elects not to obtain (or cause to be obtained) a Rating Agency Confirmation with respect to any applicable matter, in each case, pursuant to and in compliance with any pooling and servicing agreement(s) or similar agreement(s), in each case, relating to the servicing and/or administration of the Loan.

"Rating Agency Confirmation" shall mean (i) prior to a Securitization or if the Rating Agency Condition exists, that Lender has (in consultation with the Rating Agencies (if required by Lender)) approved the matter in question in writing based upon Lender's good faith determination of applicable Rating Agency standards and criteria and (ii) from and after a Securitization (to the extent the Rating Agency Condition does not exist), a written affirmation from each of the Rating Agencies (obtained at Borrower's sole cost and expense) that the credit rating of the Securities by such Rating Agency immediately prior to the occurrence of the event with respect to which such Rating Agency Confirmation is sought will not be qualified, downgraded or withdrawn as a result of the occurrence of such event, which affirmation may be granted or withheld in such Rating Agency's sole and absolute discretion.

"Secondary Market Transaction" shall have the meaning set forth in the Loan Agreement.

"Securities" shall have the meaning set forth in the Loan Agreement.

"Securitization" shall have the meaning set forth in the Loan Agreement.

"Servicer" shall have the meaning set forth in the Loan Agreement.

"Special Purpose Entity" shall have the meaning set forth in Schedule C attached hereto and incorporated herein.

B. Rules of Construction

Definitions in this Agreement apply equally to both the singular and plural forms of the defined terms. The words "include" and "including" shall be deemed to be followed by the phrase "without limitation." The terms "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Section, paragraph or subdivision. The Section titles appear as a matter of convenience only and shall not affect the interpretation of this Agreement. All Section, paragraph, clause, Exhibit or Schedule references not attributed to a particular document shall be references to such parts of this Agreement.

SCHEDULE B

Member

| Name | Mailing Address | Agreed Value of Capital Contribution | Limited Liability Company Interest |
|---|---|---|---|
| BE TAMPA LLC | 6 Boone Street, Staten Island, NY 10314 | $3,070,000 | 100% |

# EXHIBIT D

## Second Amended Consent Final Judgment and Attached Consent

Includes the $16,794,016.42 judgment and consent signature page with blank printed Name and Title fields.

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT, IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

CASE NO.: 2025-CA-8982

BP CM ACQUISITION SPV, LLC,

Plaintiff,

v.

BE GREENBRIAR LLC, a Florida limited liability company; BE UNION LLC, a Florida limited liability company; and MEADOW WOOD PROPERTY COMPANY, a Florida corporation;

Defendants.
________________________________________/

**SECOND AMENDED CONSENT FINAL JUDGMENT OF FORECLOSURE**
***(RESETS FORECLOSURE SALE FROM JUNE 8 TO JUNE 29, 2026)***[1]

THIS CAUSE having come before the Court on the agreement between Plaintiff BP CM Acquisition SPV, LLC and Defendants BE Grenbriar LLC and BE Union LLC, and the Court, having reviewed the Consent to Entry of Final Judgment of Foreclosure signed by Defendants BE Greenbriar LLC and BE Union LLC that was filed in this action and included as an exhibit hereto, and being otherwise fully advised in the premises, it is hereby **ORDERED AND ADJUDGED:**

1. The Court finds that proper service of process was made on the Defendants. This Court has jurisdiction over the subject matter and parties; through this consent, the parties have agreed that the allegations contained in the Complaint have been proven by competent evidence; and the equities are with Plaintiff.

2. The Loan Documents on which Plaintiff sued constitute a valid first lien upon the property hereafter described, are valid and binding, and Defendants are in default under the Loan

[1] Total indebtedness is also updated.

Documents, as alleged in the Complaint.

3. The following amount is due and owing to Plaintiff:

| | |
|---|---|
| Principal | $14,250,000.00 |
| Interest from November 9, 2025 through June 9, 2026 (5% contract rate under the Note) | $ 730,383.75 |
| Default interest from November 9, 2025 through June 9, 2026 (varying rate between 7.91% and 7.49% layered on regular rate) | $ 663,020.83 |
| Late Fees (5%) | $ 712,500.00 |
| Receivership fees | $ 38,500.00 |
| Protective Advance per Order approving Stipulation | $ 350,000.00 |
| Filing fees and service of process | $ 2, 407.94 |
| Title commitment and update | $ 1,000.00 |
| Attorneys' fees through April 30, 2026 | $ 46,203.90[2][3] |
| **TOTAL DUE** | **$ 16,794,016.42** |

4. The total amount referenced in Paragraph 3 shall bear interest from this date forward at the prevailing legal rate of 8.25% per annum from this date through December 31 of this current year, for which sum let execution issue forthwith. Thereafter, the interest rate will adjust in accordance with section 55.03, Florida Statutes, until the judgment is paid.

[2] In their Consent, Defendants BE Greenbriar LLC and BE Union LLC consented to the amounts set forth above, including the amount of attorneys' fees, obviating the need for submission of an affidavit of reasonableness. Further, fees continue to be incurred, and these amounts do not include fees and costs associated with pursuit of the guarantors in New York action.

[3] The attorneys's fees are composed of the following: Joseph Lubertazzi, Chairman of the Firm and relationship attorney, 7.6 hours at $990/hour: $7,524.00; Stephanie Reed Traband, lead counsel, 44.70 hours at $775 and $800/hour: $35,457.50; Marlene James, paralegal, 1.5 hours at blended rate of $391.67/hour: $587.50; Chailene Fernandez, paralegal assistant, 2.60 hours at $275/hour: $714.90; Tyler Mitchell, non-Florida associate, 3.2 hours at $600/hour: $1,920.00.

5. Plaintiff holds a lien for the total sum due superior to any right, title, interest, claim or estate of Defendants, or any of them, in and to the property described herein (the "Property"):

Parcel 1:

Begin 5 chains East of the Northwest corner of Section 32, Township 28 South, Range 19 East, and run thence South 5 chains, East 5 chains, North 5 chains and West 5 chains to Point of Beginning, and otherwise described as the Northeast Quarter of the Northwest Quarter of the Northwest Quarter of the Northwest Quarter of Section 32, Township 28 South, Rage 19 East, Hillsborough County, Florida, less existing right of way for Sligh Avenue and the South 15 feet of the North 40 feet of aforesaid described lands.

Parcel 2:

BEING all that lot or parcel of land, with improvements thereon and appurtenances thereto, which is more particularly described as follows:

The South 339.00 feet of the West 1/2 of the Northwest 1/4 of the Northwest 1/4 of the Northeast 1/4 of Section 7, Township 28 South, Range 19 East, Hillsborough County, Florida, LESS the West 30.00 feet thereof as described in Deed Book 1875, Page 316, of the Public Records of Hillsborough County; AND LESS the South 30.00 feet of the West 35.00 feet of the West 1/2 of the Northwest 1/4 of the Northwest 1/4 of the Northeast 1/4 of Section 7, Township 28 South, Range 19 East, Hillsborough County, Florida; LESS the West 30.00 feet thereof, as described in Official Records Book 3890, Page 228, of the Public Records of Hillsborough County, Florida.

This lien is superior to any lien claimed by Defendant Meadow Wood Property Company, which filed an answer in this case in which it acknowledged the superiority of Plaintiff's lien, merely reserving its right to claim in any surplus funds.

6. Under Section 45.031, Florida Statutes, if the total sum with interest at the rate described above and all cost accrued subsequent to the judgment are not paid, the Clerk of the Court shall sell the Property at public sale on the **29th day of June, 2026, at 10:00 a.m.**, to the highest bidder for cash, except as set forth hereinafter, in Hillsborough County, Florida, online at https://hillsborough.realforeclose.com.

7. Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if Plaintiff is not the purchaser of the Property for sale. If Plaintiff is the purchaser, the Clerk shall credit Plaintiff's bid with the total sum with interest and costs accruing

subsequent to this judgment or such part of it as is necessary to pay the bid in full. If, subsequent to the date of the entry of this Final Judgment and prior to the sale contemplated herein, Plaintiff shall be required to advance any monies to protect its lien and/or security interest, then upon motion and Order from the Court, the amount due to Plaintiff shall be increased by the amount of such advance(s).

8. On filing the certificate of title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of Plaintiff's costs; second, documentary stamps affixed to the certificate; third, Plaintiff's attorneys' fees; fourth, the total sum due to Plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 4 from this date to the date of the sale; and by retaining any remaining amount pending the further order of this Court.

9. Should the Property be sold at the Clerk's sale to a third-party bidder, the costs of the documentary stamps affixed to the certificate of title shall be paid by the prevailing third-party bidder.

10. After confirmation of the sale, whether confirmation be by the Clerk's filing the certificate of title or by order of this Court ruling upon objections to the sale, Defendants and all persons claiming by, through, under, or against them since the filing of the Notice of Lis Pendens herein, shall be forever foreclosed of all right, title, interest, estate or claim in the Property being sold and the purchaser at the sale shall be let into possession thereof.

11. On filing the certificate of sale, Defendants and all persons claiming under or against Defendants since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the Property, except as to claims or rights under Chapter 718, if any.

12. Immediately after the confirmation of the sale, whether confirmation be made by the Clerk's issuance of the certificate of title or by order of this Court ruling upon any objections to the sale, the Clerk shall, at the request of Plaintiff, immediately issue a writ of possession.

13. This Court retains jurisdiction to enter any further orders as necessary, including, but not limited to, a re-foreclosure and the filing of any supplemental complaint to add an omitted party post-judgment, to seek writ(s) of possession and to pursue a deficiency judgment against Defendants.

14. Plaintiff may assign this judgment and any rights under it, including, but not limited to, their right to credit bid, by the filing of an assignment without further Order of the Court.

15. The last known addresses of the Defendants are as follows:

BE GREENBRIAR LLC
50 Union Avenue, Suite 505, Irvington, New Jersey 07111

BE UNION LLC
50 Union Avenue, Suite 505, Irvington, New Jersey 07111

MEADOW WOOD PROPERTY COMPANY
4014 Gunn Highway, Suite 270, Tampa, Florida 33618

**NOTICE PURSUANT TO AMENDMENT TO SECTION 45.031, FLA. STAT.**

**IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.**

**IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.**

**IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE HILLSBOROUGH COUNTY CLERK OF THE COURT, (813) 276-8100, 419 PIERCE STREET, TAMPA, FLORIDA 33602, WITHIN**

**TEN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.**

**IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT BAY AREA LEGAL SERVICES, INC., GEORGE EDGECOMB COURTHOUSE, 800 E. TWIGGS ST., ROOM 101, TAMPA, FL 33602, 800-625-2257 TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT BAY AREA LEGAL SERVICES, INC. FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.**

DONE AND ORDERED in Hillsborough County, Florida, on this ___ day of _________, 2026.

Electronically Conformed 6/4/2026
Laura E. Ward

___________________________
Circuit Judge

Copies furnished to all counsel and parties of record.



ME1\61233044.v1

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT, IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

CASE NO.: 2025-CA-8982

BP CM ACQUISITION SPV, LLC,

Plaintiff,

v.

BE GREENBRIAR LLC, a Florida limited liability company; BE UNION LLC, a Florida limited liability company; and MEADOW WOOD PROPERTY COMPANY, a Florida corporation;

Defendants.
_______________________________________/

**CONSENT TO ENTRY OF CONSENT FINAL JUDGMENT OF FORECLOSURE**

This CONSENT TO ENTRY OF CONSENT FINAL JUDGMENT OF FORECLOSURE (the "Stipulation") is made and entered into as of __________, ___ 202, by BE GREENBRIAR LLC and BE UNION, LLC ("Borrowers").

Borrowers consent to the entry of a final judgment of foreclosure and waive any right to contest same or to otherwise require the submission of a motion for final judgment of foreclosure. Borrowers further acknowledge that this Consent has been delivered to Plaintiff and Plaintiff is authorized to file this Consent together with the proposed Consent Final Judgment of Foreclosure to evidence the consent by Borrowers to entry of the Consent Final Judgment of Foreclosure.

**IN WITNESS WHEREOF**, Borrowers have caused this Consent to be duly executed by their duly authorized representatives, all as of the day and year first above written..

**BE GREENBRIAR LLC**

Simon Markovici

By: 4/30/26
Name:
Title:

**BE UNION LLC**

Simon Markovici

By: 4/30/26
Name:
Title:



ME1\60355486.v1

# EXHIBIT E

## Colliers Broker Opinion of Value - Selected As-Is and Stabilized Pages

Shows 33% as-is occupancy, as-is value range, 90% stabilized scenario, projected positive NOI and cash flow, and stabilized value range.

# Rent Roll I As-Is

| | | | | AVERAGE EFFECTIVE RENT | | | CURRENT ASKING RENT | | | PRO FORMA RENT | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Unit Type** | **Units** | **RSF** | **Total SF** | **Monthly** | **Per SF** | **Total** | **Monthly** | **Per SF** | **Total** | **Monthly** | **Per SF** | **Total** |
| 1Bdr/1Bath | 35 | 615 | 21,525 | $1,100 | $1.79 | $38,500 | $1,150 | $1.87 | $40,250 | $1,250 | $2.03 | $43,750 |
| 1Bdr/1Bath (Renovated) | 31 | 615 | 19,065 | $1,200 | $1.95 | $37,200 | $1,225 | $1.99 | $37,975 | $1,250 | $2.03 | $38,750 |
| 2Bdr/1Bath | 9 | 900 | 8,100 | $1,300 | $1.44 | $11,700 | $1,375 | $1.53 | $12,375 | $1,450 | $1.61 | $13,050 |
| 2Bdr/1Bath (Renovated) | 5 | 900 | 4,500 | $1,400 | $1.56 | $7,000 | $1,425 | $1.58 | $7,125 | $1,450 | $1.61 | $7,250 |
| 2Bdr/2Bath | 20 | 872 | 17,440 | $1,325 | $1.52 | $26,500 | $1,400 | $1.61 | $28,000 | $1,525 | $1.75 | $30,500 |
| 2Bdr/2Bath (Renovated) | 20 | 872 | 17,440 | $1,475 | $1.69 | $29,500 | $1,500 | $1.72 | $30,000 | $1,525 | $1.75 | $30,500 |
| **Totals / Wtd. Averages** | **120** | **734** | **88,070** | **$1,253** | **$1.71** | **$150,400** | **$1,298** | **$1.77** | **$155,725** | **$1,365** | **$1.86** | **$163,800** |

OCCUPANCY




UNIT MIX




RENTAL UPSIDE



# Income Build | As-Is

| | Takeover | | | | Fiscal Year 1 | | | | Fiscal Year 2 | | | | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | **$/Year** | **$/Unit** | **%** | | **$/Year** | **$/Unit** | **%** | | **$/Year** | **$/Unit** | **%** | |
| Market Rents | | 1,868,700 | 15,573 | 100.00% | | 1,965,600 | 16,380 | 100.00% | | 1,965,600 | 16,380 | 100.00% | |
| Loss-to-Lease (-) | 3.42% | -63,900 | -533 | -3.42% | 4.93% | -96,900 | -808 | -4.93% | 1.50% | -29,484 | -246 | -1.50% | |
| **Gross Potential Rents** | | **$1,804,800** | $15,040 | 96.58% | | **$1,868,700** | $15,573 | 95.07% | | **$1,936,116** | $16,134 | 98.50% | |
| | | | | | | | | | | | | | |
| Vacancy (-) | 66.70% | -1,203,802 | -10,032 | -66.70% | 30.00% | -560,610 | -4,672 | -30.00% | 5.00% | -96,806 | -$807 | -5.00% | |
| Concessions (-) | 0.50% | -9,024 | -75 | -0.50% | 0.50% | -9,344 | -78 | -0.50% | | | | | |
| Bad Debt (-) | 1.00% | -18,048 | -150 | -1.00% | 1.00% | -18,687 | -156 | -1.00% | 1.00% | -19,361 | -$161 | -1.00% | |
| Total Economic Loss | | -1,230,874 | -10,257 | -68.20% | | -588,641 | -4,905 | -31.50% | | -116,167 | -$968 | -6.00% | [1] |
| **Net Rental Income** | | **$573,926** | $4,783 | 28.38% | | **$1,280,060** | $10,667 | 63.57% | | **$1,819,949** | $15,166 | 92.50% | |
| | | | | | | | | | | | | | |
| **Other Income** | | | | | | | | | | | | | |
| Utility Recapture | | 39,620 | 330 | 2.12% | | 70,560 | 588 | 3.59% | | 90,720 | 756 | 4.62% | [2] |
| Application/Legal/NSF | | 9,628 | 80 | 0.52% | | 9,628 | 80 | 0.49% | | 9,628 | 80 | 0.49% | [3] |
| Cleaning and Damage | | 4,700 | 39 | 0.25% | | 4,700 | 39 | 0.24% | | 4,700 | 39 | 0.24% | [4] |
| Miscellaneous Income | | 2,800 | 23 | 0.15% | | 2,800 | 23 | 0.14% | | 2,800 | 23 | 0.14% | [5] |
| Late Fees | | 2,000 | 17 | 0.11% | | 2,000 | 17 | 0.10% | | 2,000 | 17 | 0.10% | [6] |
| Insurance Services | | 5,860 | 49 | 0.31% | | 5,860 | 49 | 0.30% | | 5,860 | 49 | 0.30% | [7] |
| **Total Other Income** | | 64,608 | 538 | 3.46% | | 95,548 | 796 | 4.86% | | 115,708 | 964 | 5.89% | |
| **Effective Gross Income** | | **$638,534** | $5,321 | 31.84% | | **$1,375,608** | $11,463 | 68.43% | | **$1,935,657** | $16,130 | 98.39% | |
| | | | | | | | | | | | | | |
| **Expenses** | | **$/Year** | **$/Unit** | **%** | | **$/Year** | **$/Unit** | **%** | | **$/Year** | **$/Unit** | **%** | |
| **Real Estate Taxes** | | | | | | | | | | | | | |
| Real Estate Taxes | | 141,532 | 1,179 | 22.17% | | 145,778 | 1,215 | 10.60% | | 148,694 | 1,239 | 7.68% | |
| Adjustment for Sale | | | | | | 0 | 0 | 0.00% | | 0 | 0 | 0.00% | |
| Non-Ad Valorem | | 4,767 | 40 | 0.75% | | 4,767 | 40 | 0.35% | | 4,767 | 40 | 0.25% | |
| **Total Real Estate Taxes** | | 146,299 | 1,219 | 22.91% | | 150,545 | 1,255 | 10.94% | | 153,461 | 1,279 | 7.93% | [8] |
| | | | | | | | | | | | | | |
| **Insurance** | | | | | | | | | | | | | |
| Property Insurance | | 138,400 | 1,153 | 21.67% | | 138,400 | 1,153 | 10.06% | | 138,400 | 1,153 | 7.15% | [9] |
| **Total Insurance** | | 138,400 | 1,153 | 21.67% | | 138,400 | 1,153 | 10.06% | | 138,400 | 1,153 | 7.15% | |
| | | | | | | | | | | | | | |
| **Utilities** | | | | | | | | | | | | | |
| Electric | | 70,051 | 584 | 10.97% | | 47,400 | 395 | 3.45% | | 24,000 | 200 | 1.24% | |
| Water / Sewer | | 195,000 | 1,625 | 30.54% | | 144,000 | 1,200 | 10.47% | | 144,000 | 1,200 | 7.44% | |
| Trash Removal | | 17,400 | 145 | 2.72% | | 17,400 | 145 | 1.26% | | 17,400 | 145 | 0.90% | |
| Cable/Internet | | 2,930 | 24 | 0.46% | | 2,930 | 24 | 0.21% | | 2,930 | 24 | 0.15% | |
| **Total Utilities** | | 285,381 | 2,378 | 44.69% | | 211,730 | 1,764 | 15.39% | | 188,330 | 1,569 | 9.73% | [10] |
| | | | | | | | | | | | | | |
| **Contract Services** | | | | | | | | | | | | | |
| Landscape Maintenance | | 9,600 | 80 | 1.50% | | 9,600 | 80 | 0.70% | | 9,600 | 80 | 0.50% | [11] |
| Pool Contract | | 4,200 | 35 | 0.66% | | 4,200 | 35 | 0.31% | | 4,200 | 35 | 0.22% | [12] |
| Pest Control Contract | | 6,000 | 50 | 0.94% | | 6,000 | 50 | 0.44% | | 6,000 | 50 | 0.31% | [13] |
| **Total Contract Services** | | 19,800 | 165 | 3.10% | | 19,800 | 165 | 1.44% | | 19,800 | 165 | 1.02% | |
| | | | | | | | | | | | | | |
| On-Site Payroll | | 192,000 | 1,600 | 10.27% | | 192,000 | 1,600 | 9.77% | | 192,000 | 1,600 | 9.77% | [14] |
| Repairs & Maintenance | | 60,000 | 500 | 9.40% | | 60,000 | 500 | 4.36% | | 60,000 | 500 | 3.10% | [15] |
| General & Administrative | | 27,300 | 228 | 4.28% | | 27,300 | 228 | 1.98% | | 27,300 | 228 | 1.41% | [16] |
| Marketing & Advertising | | 10,500 | 88 | 1.64% | | 10,500 | 88 | 0.76% | | 10,500 | 88 | 0.54% | [17] |
| Management Fee | 3.00% | 19,156 | 160 | 3.00% | 3.00% | 41,268 | 344 | 3.00% | 3.00% | 58,070 | 484 | 3.00% | [18] |
| Turnover | | 30,000 | 250 | 4.70% | | 30,000 | 250 | 2.18% | | 30,000 | 250 | 1.55% | [19] |
| Security Service | | 63,962 | 533 | 10.02% | | | | | | | | | [20] |
| Reserves & Replacements | | 30,000 | 250 | 4.70% | | 30,000 | 250 | 2.18% | | 30,000 | 250 | 1.55% | |
| **Total Operating Expenses** | | **$1,022,798** | $8,523 | 160.18% | | **$911,544** | $7,596 | 66.26% | | **$907,861** | $7,566 | 46.90% | |
| | | | | | | | | | | | | | |
| **Net Operating Income** | | **-$384,264** | -$3,202 | -60.18% | | **$464,064** | $3,867 | 33.74% | | **$1,027,796** | $8,565 | 53.10% | |
| Capital Expenditures | | | | | | 125,000 | 1,042 | 6.69% | | 125,000 | 1,042 | 6.69% | |
| | | | | | | | | | | | | | |
| **Cash Flow Before Debt Service** | | **-$384,264** | -$3,202 | -60.18% | | **$339,064** | $2,826 | 24.65% | | **$902,796** | $7,523 | 46.64% | |

# Pricing Chart l As-Is

| | Purchase Price | Takeover Cap Rate | Fiscal Year 1 Cap Rate | Fiscal Year 2 Cap Rate | FY1 Cash-on-Cash Return | Unlevered IRR | Levered IRR | Price Per SF | Price Per Unit | DCR |
|---|---|---|---|---|---|---|---|---|---|---|
| | $10,700,000 | -3.59% | 4.30% | 9.57% | -8.82% | 20.83% | 40.37% | $121.49 | $89,167 | -0.57 |
| **Price Range** | $10,600,000 | -3.63% | 4.35% | 9.67% | -8.68% | 21.28% | 41.42% | $120.36 | $88,333 | -0.57 |
| | $10,500,000 | -3.66% | 4.41% | 9.77% | -8.53% | 21.74% | 42.47% | $119.22 | $87,500 | -0.58 |
| **$10,500,000** | **$10,400,000** | **-3.69%** | **4.46%** | **9.88%** | **-8.38%** | **22.21%** | **43.53%** | **$118.09** | **$86,667** | **-0.59** |
| | $10,300,000 | -3.73% | 4.52% | 9.99% | -8.23% | 22.68% | 44.60% | $116.95 | $85,833 | -0.59 |
| **to** | $10,200,000 | -3.77% | 4.58% | 10.10% | -8.08% | 23.16% | 45.67% | $115.82 | $85,000 | -0.60 |
| | $10,100,000 | -3.80% | 4.64% | 10.22% | -7.92% | 23.64% | 46.76% | $114.68 | $84,167 | -0.60 |
| **$9,900,000** | $10,000,000 | -3.84% | 4.70% | 10.34% | -7.76% | 24.13% | 47.85% | $113.55 | $83,333 | -0.61 |
| | $9,900,000 | -3.88% | 4.76% | 10.45% | -7.60% | 24.62% | 48.95% | $112.41 | $82,500 | -0.62 |
| | $9,800,000 | -3.92% | 4.82% | 10.58% | -7.43% | 25.12% | 50.06% | $111.28 | $81,667 | -0.62 |
| | $9,700,000 | -3.96% | 4.89% | 10.70% | -7.26% | 25.63% | 51.17% | $110.14 | $80,833 | -0.63 |

# Net Proceeds l As-Is

| Net Proceeds | | List Price | Sales Range | |
|---|---|---|---|---|
| **Pricing** | | $10,400,000 | $10,500,000 | $9,900,000 |
| Escrow Fees | | $3,000 | $3,000 | $3,000 |
| Title Fees | | $27,125 | $27,325 | $26,100 |
| Deed Transfer Tax | 0.70% | $72,800 | $73,500 | $69,300 |
| Commission | 1.95% | $202,800 | $204,750 | $193,050 |
| Total Costs | | $305,725 | $308,575 | $291,450 |
| Total Net Proceeds (1) | | $10,094,275 | $10,191,425 | $9,608,550 |

(1) Does not include mortgages, pro rating of rents, taxes, impounds or security deposits.

# Rent Roll I Stabilized

| | | | | AVERAGE EFFECTIVE RENT | | | CURRENT ASKING RENT | | | PRO FORMA RENT | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit Type | Units | RSF | Total SF | Monthly | Per SF | Total | Monthly | Per SF | Total | Monthly | Per SF | Total |
| 1Bdr/1Bath I Greenbriar | 11 | 615 | 6,765 | $1,100 | $1.79 | $12,100 | $1,150 | $1.87 | $12,650 | $1,250 | $2.03 | $13,750 |
| 1Bdr/1Bath (Renovated) I Greenbriar | 55 | 615 | 33,825 | $1,200 | $1.95 | $66,000 | $1,225 | $1.99 | $67,375 | $1,250 | $2.03 | $68,750 |
| 2Bdr/1Bath I Greenbriar | 4 | 900 | 3,600 | $1,300 | $1.44 | $5,200 | $1,375 | $1.53 | $5,500 | $1,450 | $1.61 | $5,800 |
| 2Bdr/1Bath (Renovated) I Greenbriar | 10 | 900 | 9,000 | $1,400 | $1.56 | $14,000 | $1,425 | $1.58 | $14,250 | $1,450 | $1.61 | $14,500 |
| 2Bdr/2Bath I Willow Square | 10 | 872 | 8,720 | $1,325 | $1.52 | $13,250 | $1,400 | $1.61 | $14,000 | $1,525 | $1.75 | $15,250 |
| 2Bdr/2Bath (Renovated) I Willow Square | 30 | 872 | 26,160 | $1,475 | $1.69 | $44,250 | $1,500 | $1.72 | $45,000 | $1,525 | $1.75 | $45,750 |
| **Totals / Wtd. Averages** | **120** | **734** | **88,070** | **$1,290** | **$1.76** | **$154,800** | **$1,323** | **$1.80** | **$158,775** | **$1,365** | **$1.86** | **$163,800** |

OCCUPANCY




UNIT MIX




RENTAL UPSIDE



# Income Build l Stabilized

| | Takeover | | | | Fiscal Year 1 | | | | Fiscal Year 2 | | | | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | $/Year | $/Unit | % | | $/Year | $/Unit | % | | $/Year | $/Unit | % | |
| Market Rents | | 1,905,300 | 15,878 | 100.00% | | 1,965,600 | 16,380 | 100.00% | | 1,965,600 | 16,380 | 100.00% | |
| Loss-to-Lease (-) | 2.50% | -47,700 | -398 | -2.50% | 3.07% | -60,300 | -503 | -3.07% | 1.50% | -29,484 | -246 | -1.50% | |
| **Gross Potential Rents** | | **$1,857,600** | $15,480 | 97.50% | | **$1,905,300** | $15,878 | 96.93% | | **$1,936,116** | $16,134 | 98.50% | |
| Vacancy (-) | 10.00% | -185,760 | -1,548 | -10.00% | 5.00% | -95,265 | -794 | -5.00% | 5.00% | -96,806 | -$807 | -5.00% | |
| Bad Debt (-) | 1.00% | -18,576 | -155 | -1.00% | 1.00% | -19,053 | -159 | -1.00% | 1.00% | -19,361 | -$161 | -1.00% | |
| Total Economic Loss | | -204,336 | -1,703 | -11.00% | | -114,318 | -953 | -6.00% | | -116,167 | -$968 | -6.00% | [1] |
| **Net Rental Income** | | **$1,653,264** | $13,777 | 86.50% | | **$1,790,982** | $14,925 | 90.93% | | **$1,819,949** | $15,166 | 92.50% | |
| **Other Income** | | | | | | | | | | | | | |
| Utility Recapture | | 97,200 | 810 | 5.10% | | 102,600 | 855 | 5.22% | | 102,600 | 855 | 5.22% | [2] |
| Laundry Income | | 7,000 | 58 | 0.37% | | 7,000 | 58 | 0.36% | | 7,000 | 58 | 0.36% | [3] |
| Application/Legal/NSF | | 3,000 | 25 | 0.16% | | 3,000 | 25 | 0.15% | | 3,000 | 25 | 0.15% | [4] |
| Cleaning and Damage | | 3,000 | 25 | 0.16% | | 3,000 | 25 | 0.15% | | 3,000 | 25 | 0.15% | [5] |
| Miscellaneous Income | | 12,000 | 100 | 0.63% | | 12,000 | 100 | 0.61% | | 12,000 | 100 | 0.61% | [6] |
| Renters Insurance | | 10,800 | 90 | 0.57% | | 10,800 | 90 | 0.55% | | 10,800 | 90 | 0.55% | [7] |
| Pest Control Income | | 12,960 | 108 | 0.68% | | 13,680 | 114 | 0.70% | | 13,680 | 114 | 0.70% | [8] |
| Trash Fee | | 12,960 | 108 | 0.68% | | 13,680 | 114 | 0.70% | | 13,680 | 114 | 0.70% | [9] |
| **Total Other Income** | | 158,920 | 1,324 | 8.34% | | 165,760 | 1,381 | 8.43% | | 165,760 | 1,381 | 8.43% | |
| **Effective Gross Income** | | **$1,812,184** | $15,102 | 94.84% | | **$1,956,742** | $16,306 | 99.37% | | **$1,985,709** | $16,548 | 100.93% | |
| **Expenses** | | $/Year | $/Unit | % | | $/Year | $/Unit | % | | $/Year | $/Unit | % | |
| **Real Estate Taxes** | | | | | | | | | | | | | |
| Real Estate Taxes | | 183,720 | 1,531 | 10.14% | | 189,232 | 1,577 | 9.67% | | 193,016 | 1,608 | 9.72% | |
| Adjustment for Sale | | | | | | 0 | 0 | 0.00% | | 0 | 0 | 0.00% | |
| Non-Ad Valorem | | 4,767 | 40 | 0.26% | | 4,767 | 40 | 0.24% | | 4,767 | 40 | 0.24% | |
| **Total Real Estate Taxes** | | 188,487 | 1,571 | 10.40% | | 193,999 | 1,617 | 9.91% | | 197,783 | 1,648 | 9.96% | [10] |
| **Insurance** | | | | | | | | | | | | | |
| Property Insurance | | 138,400 | 1,153 | 7.64% | | 138,400 | 1,153 | 7.07% | | 138,400 | 1,153 | 6.97% | [11] |
| **Total Insurance** | | 138,400 | 1,153 | 7.64% | | 138,400 | 1,153 | 7.07% | | 138,400 | 1,153 | 6.97% | |
| **Utilities** | | | | | | | | | | | | | |
| Electric | | 36,000 | 300 | 1.99% | | 24,000 | 200 | 1.23% | | 24,000 | 200 | 1.21% | |
| Water / Sewer | | 144,000 | 1,200 | 7.95% | | 144,000 | 1,200 | 7.36% | | 144,000 | 1,200 | 7.25% | |
| Trash Removal | | 17,400 | 145 | 0.96% | | 17,400 | 145 | 0.89% | | 17,400 | 145 | 0.88% | |
| Cable/Internet | | 2,930 | 24 | 0.16% | | 2,930 | 24 | 0.15% | | 2,930 | 24 | 0.15% | |
| **Total Utilities** | | 200,330 | 1,669 | 11.05% | | 188,330 | 1,569 | 9.62% | | 188,330 | 1,569 | 9.48% | [12] |
| **Contract Services** | | | | | | | | | | | | | |
| Landscape Maintenance | | 12,000 | 100 | 0.66% | | 12,000 | 100 | 0.61% | | 12,000 | 100 | 0.60% | [13] |
| Pool Contract | | 4,200 | 35 | 0.23% | | 4,200 | 35 | 0.21% | | 4,200 | 35 | 0.21% | [14] |
| Pest Control Contract | | 6,000 | 50 | 0.33% | | 6,000 | 50 | 0.31% | | 6,000 | 50 | 0.30% | [15] |
| **Total Contract Services** | | 22,200 | 185 | 1.23% | | 22,200 | 185 | 1.13% | | 22,200 | 185 | 1.12% | |
| On-Site Payroll | | 192,000 | 1,600 | 10.08% | | 192,000 | 1,600 | 9.77% | | 192,000 | 1,600 | 9.77% | [16] |
| Repairs & Maintenance | | 36,000 | 300 | 1.99% | | 36,000 | 300 | 1.84% | | 36,000 | 300 | 1.81% | [17] |
| General & Administrative | | 18,000 | 150 | 0.99% | | 18,000 | 150 | 0.92% | | 18,000 | 150 | 0.91% | [18] |
| Marketing & Advertising | | 12,000 | 100 | 0.66% | | 12,000 | 100 | 0.61% | | 12,000 | 100 | 0.60% | [19] |
| Management Fee | 3.00% | 54,366 | 453 | 3.00% | 3.00% | 58,702 | 489 | 3.00% | 3.00% | 59,571 | 496 | 3.00% | [20] |
| Turnover | | 30,000 | 250 | 1.66% | | 30,000 | 250 | 1.53% | | 30,000 | 250 | 1.51% | [21] |
| Reserves & Replacements | | 30,000 | 250 | 1.66% | | 30,000 | 250 | 1.53% | | 30,000 | 250 | 1.51% | [22] |
| **Total Operating Expenses** | | **$921,783** | $7,682 | 50.87% | | **$919,631** | $7,664 | 47.00% | | **$924,284** | $7,702 | 46.55% | |
| **Net Operating Income** | | **$890,401** | $7,420 | 49.13% | | **$1,037,111** | $8,643 | 53.00% | | **$1,061,425** | $8,845 | 53.45% | |
| Capital Expenditures | | | | | | 125,000 | 1,042 | 6.56% | | 125,000 | 1,042 | 6.56% | |
| **Cash Flow Before Debt Service** | | **$890,401** | $7,420 | 49.13% | | **$912,111** | $7,601 | 46.61% | | **$936,425** | $7,804 | 47.16% | |

# Pricing Chart l Stabilized

| | Purchase Price | Takeover Cap Rate | Fiscal Year 1 Cap Rate | Fiscal Year 2 Cap Rate | FY1 Cash-on-Cash Return | Unlevered IRR | Levered IRR | Price Per SF | Price Per Unit | DCR |
|---|---|---|---|---|---|---|---|---|---|---|
| | $13,900,000 | 6.41% | 7.42% | 7.60% | 7.74% | 10.97% | 18.05% | $157.83 | $115,833 | 1.27 |
| **Price Range** | $13,800,000 | 6.45% | 7.48% | 7.66% | 7.93% | 11.10% | 18.33% | $156.69 | $115,000 | 1.28 |
| | $13,700,000 | 6.50% | 7.55% | 7.73% | 8.12% | 11.22% | 18.60% | $155.56 | $114,167 | 1.29 |
| **$13,700,000** | $13,600,000 | 6.55% | 7.62% | 7.79% | 8.32% | 11.35% | 18.88% | $154.42 | $113,333 | 1.30 |
| | **$13,500,000** | **6.60%** | **7.68%** | **7.86%** | **8.52%** | **11.48%** | **19.15%** | **$153.29** | **$112,500** | **1.31** |
| **to** | $13,400,000 | 6.64% | 7.75% | 7.93% | 8.72% | 11.60% | 19.43% | $152.15 | $111,667 | 1.32 |
| | $13,300,000 | 6.69% | 7.82% | 8.00% | 8.93% | 11.73% | 19.71% | $151.02 | $110,833 | 1.33 |
| **$13,100,000** | $13,200,000 | 6.75% | 7.89% | 8.07% | 9.14% | 11.86% | 20.00% | $149.88 | $110,000 | 1.34 |
| | $13,100,000 | 6.80% | 7.96% | 8.15% | 9.35% | 12.00% | 20.28% | $148.75 | $109,167 | 1.35 |
| | $13,000,000 | 6.85% | 8.03% | 8.22% | 9.57% | 12.13% | 20.57% | $147.61 | $108,333 | 1.36 |
| | $12,900,000 | 6.90% | 8.10% | 8.29% | 9.79% | 12.26% | 20.85% | $146.47 | $107,500 | 1.37 |

# Net Proceeds

| Net Proceeds | | List Price | Sales Range | |
|---|---|---|---|---|
| **Pricing** | | $13,500,000 | $13,700,000 | $13,100,000 |
| Escrow Fees | | $3,000 | $3,000 | $3,000 |
| Title Fees | | $33,325 | $33,725 | $32,525 |
| Deed Transfer Tax | 0.70% | $94,500 | $95,900 | $91,700 |
| Commission | 1.50% | $202,500 | $205,500 | $196,500 |
| Total Costs | | $333,325 | $338,125 | $323,725 |
| Total Net Proceeds (1) | | $13,166,675 | $13,361,875 | $12,776,275 |

(1) Does not include mortgages, pro rating of rents, taxes, impounds or security deposits.

# EXHIBIT F

## BP CM Proposed Stay-Relief Order

Would waive the Rule 4001(a)(4) 14-day stay and purports to grant relief in the separate BE Union case.

# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BE Greenbriar LLC, | ) | Case No. 1-26-42859 (JMM) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER BANKRUPTCY CODE SECTION 362(d)**

**WHEREAS,** BP CM Acquisition SPV, LLC, (the "Lender") filed a *Motion for Relief from the Automatic Stay Under Bankruptcy Code Section 362(d)* (the "Motion"), [1] with all accompanying exhibits, pertaining to property located at 13214 Bunn Circle, Tampa, Florida and 2301 East Sligh Avenue, Tampa, Florida (the "Mortgaged Property");

**WHEREAS,** it appearing that due and sufficient notice of the Motion and the hearing thereon was provided;

**WHEREAS,** on August __, 2026, a hearing having been held on the Motion at which the Court considered any opposition to the relief requested in the Motion;

**WHEREAS,** as of the date of the hearing, an Order for Relief has been entered be the Debtor has not participated in this Chapter 11 proceeding by the Debtor BE Greenbriar LLC ("Debtor");

**NOW, THEREFORE**, it is hereby

**ORDERED**, pursuant to 11 U.S.C. § 362(d) and Federal Rule of Bankruptcy Procedure 4001(a), that the Motion be and hereby is granted; and it is further

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Motion.

**ORDERED**, in accordance with the foregoing, that the automatic stay arising under 11 U.S.C. § 362(a) is hereby modified to permit Lender to exercise its non-bankruptcy rights and remedies with respect to the foreclosure action described in the Motion, including, without limitation, proceeding with a foreclosure sale of the subject property described therein and all subsequent proceedings related to same; and it is further

**ORDERED**, pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(4), that the 14-day stay of this Order is hereby waived; and it is further

**ORDERED**, that this Order applies with same force and effect in the involuntary bankruptcy case *In re BE Union LLC*, Case No. 1-26-42858 (JMM); and it is further

**ORDERED**, in accordance with the foregoing, that the automatic stay arising under 11 U.S.C. § 362(a) in the case *In re BE Union LLC*, Case No. 1-26-42858 (JMM) is hereby modified to permit Lender to exercise its non-bankruptcy rights and remedies with respect to the foreclosure action described in the Motion, including, without limitation, proceeding with a foreclosure sale of the subject property described therein.

**IT IS SO ORDERED.**

Dated: New York, New York

________________ ______

________________________________________

**Honorable Jil Mazer-Marino**
**United States Bankruptcy Judge**

# EXHIBIT G

## Amended Notice of Hearing

Sets August 19, 2026 objection deadline and August 26, 2026 hearing.

Objections Due: August 19, 2026
Hearing Date, if Objections: August 26, 2026 at 1:30 p.m.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| BE Greenbriar LLC, | Case No. 1-26-42859 (JMM) |
| Debtor. | |

**NOTICE OF HEARING ON MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)**

TO: SEE ATTACHED SERVICE LIST

**PLEASE TAKE NOTICE** that on August 26, 2026 (the "**Hearing Date**") at 1:30 p.m., or as soon thereafter as counsel can be heard, BP CM Acquisition SPV, LLC (the "**Lender**"), by and through its attorneys, McCarter & English, LLP, will move before the Honorable Jill Mazer-Marino, Chief United States Bankruptcy Judge, for an Order lifting and/or modifying the automatic stay pursuant to Section 362 of Title 11 of the United States Code (the "**Bankruptcy Code**") and waiving any stay imposed under Fed. R. Bank. P. 4001(a)(3), together with such other and further relief as this Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE** that the hearing shall be conducted using the Webex platform via videoconference. All hearing participants must register with eCourt Appearances in advance of the Hearing Date. Attorneys with a CM/ECF account may find the program under the "Utilities" menu after logging on to CM/ECF. Those without CM/ECF accounts may access the program on the website at https://ecf.nyeb.uscourts.gov/cgi-bin/nyebAppearances.pl. To register for eCourt Appearances and for more information on eCourt Appearances, including a tutorial, please see Chief Judge Mazer-Marino's webpage at https://www.nyeb.uscourts.gov/content/judge-jil-mazer-marino. Once registered, eCourt

Appearances will email the telephone number and/or video link for your hearing. You may register for hearings weeks in advance, but the telephone number and/or video link will not be emailed to you until 48 hours before the hearing date. Those registering with eCourt Appearances less than 48 hours in advance of the hearing should allow up to 15 minutes after registration to receive the email with the telephone number and/or video link.

**PLEASE TAKE FURTHER NOTICE** that in support thereof, Lender shall rely upon the *Motion for Relief from the Automatic Stay Under Bankruptcy Code Section 362(d)* (including the Declaration of Joshua Chung with exhibits attached thereto), filed on July 29, 2026 [Docket No. 16], and all pleadings and proceedings filed herein.

**PLEASE TAKE FURTHER NOTICE** that any objections to the relief requested herein must be made in writing, shall state with particularity the reasons for the objection and shall be electronically filed and served upon the undersigned no later than seven (7) days before the Hearing Date. Any reply of movant shall be filed and served no later than three (3) days before the Hearing Date.

**PLEASE TAKE FURTHER NOTICE**, that unless timely objections are filed, an Order may be entered without a hearing.

Dated: August 5, 2026
Newark, New Jersey

**McCARTER & ENGLISH, LLP**

By: */s/ Joseph Lubertazzi, Jr.*
Joseph Lubertazzi, Jr.
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070
Email: jlubertazzi@mccarter.com

*Counsel for BP CM Acquisition SPV, LLC*

**Service List**

BE GREENBRIAR LLC
50 Union Avenue, Suite 505
Irvington, NJ 07111-5221
*Debtor*

Christian N. Martinez
The Law Office of Christian N. Martinez
PO Box 3
Chester, NY 10918-0003
*Counsel for the Debtor*

*Office of the United States Trustee*
Eastern District of NY (Brooklyn)
Alexander Hamilton Custom House
One Bowling Green, Suite 510
New York, NY 10004-1415

David Neiman
1620 Vauxhall Rd Suite 308
Union, NJ 07083-3409
*Petitioning Creditor*

# EXHIBIT H

## Order for Relief under Chapter 11

Order signed July 28, 2026 in this involuntary Chapter 11 case.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| BE GREENBRIAR LLC, | |
| | Case No. 26-42859-jmm |
| Debtor. | |

## ORDER FOR RELIEF

Upon the involuntary petition for relief under section 303, chapter 11, title 11 of the United States Code (the "Bankruptcy Code") filed on June 8, 2026 by David Neiman (the "Petitioning Creditor"); and upon the certificate of service evidencing service of the involuntary petition on BE GREENBRIAR LLC (the "Debtor"); and no answer or response to the involuntary petition having been filed, now therefore it is

**ORDERED**, that pursuant to 11 U.S.C. § 303(h), relief under Chapter 11 of the Bankruptcy Code is granted; and it is further

**ORDERED**, that pursuant to Fed. R. Bankr. P. 1007(a)(2), the Debtor shall file a list of creditors within 7 days of the entry of this Order; and it is further

**ORDERED**, that pursuant to Fed. R. Bankr. P. 1007(c), the Debtor shall file its schedules and statements within 14 days of entry of this Order; and it is further

**ORDERED**, that the Debtor shall file a statement of its taxpayer identification with the Clerk's Office within 7 days of entry of this Order; and it is further

**ORDERED**, pursuant to Fed. R. Bankr. P. 1007(k), if the Debtor fails to file its list of creditors, schedules and statements, and taxpayer identification timely, the Petitioning Creditor shall file those documents within 21 days of entry of this order, and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order by mail, upon the Debtor at its last known address, the Petitioning Creditor, and the Office of the United States Trustee for Region 2.

Dated: July 28, 2026
Brooklyn, New York

Jil Mazer-Marino
Chief United States Bankruptcy Judge